[No. G005603. Fourth Dist., Div. Three. Jan. 31, 1989.]

CITY OF STANTON, Plaintiff and Appellant, v.
GINGER COX et al., Defendants and Respondents.

1558

**COUNSEL**

Thomas W. Allen, City Attorney, for Plaintiff and Appellant.

Hecht, Diamond & Greenfield and Roger Jon Diamond for Defendants and Respondents.

**OPINION**

**SILLS, J.*** —This is an appeal by the City of Stanton regarding its unsuccessful attempts under zoning ordinances to close an adult business which sells sexually explicit literature and materials. The store also operates a video arcade on the premises. Stanton's request for a permanent injunction was denied in the court below.

---

* Assigned by the Chairperson of the Judicial Council.

I

FACTS

Defendant Ginger Cox is the proprietor of Earmark Books located in the City of Stanton. Defendant Richard Romano is the manager of the shopping center and the individual who negotiated the lease with Cox for her bookstore. In early 1985, Cox applied for and received a business license from Stanton to operate a "Mass Media Bookstore and Video Tapecenter." Shortly after receiving the license, she opened her emporium and began selling sexually oriented books, magazines, toys, and videotapes. Those having an appetite for such materials could also view sexually explicit videos in enclosed booths on the premises.

The shopping center where Earmark is located is zoned C-1, and bookstores were permitted in such areas. Arcades were not mentioned in the list of uses authorized in a C-1 zone, but were allowed subject to a conditional use permit in C-2 zones, provided they were not located within 1,000 feet of any other such business or within 500 feet of any church, school, park, playground, or residence. Arcades were, however, required to obtain an entertainment license and were subject to such other conditions as the municipal planning commission might specify. The ordinance also imposed other restrictions on arcades which are not relevant to this appeal. It should be noted that the language of the ordinance governing arcades repeatedly referred to "games," "game machines," and "gamerooms." No mention was made of movie or video arcades or theaters.

Adult entertainment establishments were permitted in C-2 zones without a conditional use permit subject to an adult entertainment ordinance. That ordinance prohibited adult bookstores within 1,000 feet of any other such business or within 500 feet of any church, school, park, playground, or residential area. There was no mention of arcades in the text of the ordinance. Violation of the ordinance is a misdemeanor.

Shortly before filing the instant lawsuit, the city apparently discovered its omission and on March 26, 1985, adopted an urgency ordinance which placed "adult mini motion picture arcades" on the list of businesses restricted under the adult entertainment ordinance. That same ordinance required booths to be open instead of enclosed and visible from the entrance of the structure housing the arcade. The ordinance also contained the following finding: "The urgency which requires immediate effect of this ordinance is that the opening of an adult mini-motion picture arcade is imminent in the

C-1 zone and it may result in an immediate impact on those surrounding businesses as well as the residences in close proximity thereto."[1]

Two days after the passage of the emergency ordinance, Stanton filed suit asking for declaratory relief, a temporary restraining order, and preliminary and permanent injunctions. Despite the rush to amend the adult entertainment ordinance to include mini motion picture arcades, the complaint did not allege that Earmark had closed booths which were not visible from the store's entrance in violation of the recently adopted urgency ordinance; in fact, the new ordinance was not mentioned at all in the complaint.

A temporary restraining order was denied, as was Stanton's subsequent request for a preliminary injunction. Trial was scheduled a year later, on July 7, 1986; and during the interim Stanton made no attempt to amend its complaint.

On the date set for trial, all parties answered ready, but the case was trailed until July 10, 1986. On the evening of July 9, 1986, the Stanton City Council amended the ordinance on an urgency basis, purportedly increasing the number of areas within the city where sexually explicit adult establishments could do business, and the findings made to justify the urgency referred to the Earmark litigation.[2] Whether the ordinance accomplished this reputed goal was disputed at trial.

The following morning, Stanton's attorneys informed the attorneys for Cox of the previous evening's legislation. As a result, all parties stipulated to continue the trial until September 29, 1986. Still, Stanton did not attempt to amend its complaint. During this lull, however, Stanton again amended its ordinance by adopting the July 9th legislation as a regular, rather than an urgency, zoning ordinance.

---

[1] Government Code section 36937 provides: "Ordinances take effect 30 days after their final passage. An ordinance takes effect immediately, if it is an ordinance: [¶] (a) Relating to an election. [¶] (b) For the immediate preservation of the public peace, health or safety, containing a declaration of the facts constituting the urgency, and is passed by a four-fifths vote of the city council. [¶] (c) Relating to street improvement proceedings. [¶] (d) Relating to taxes for the usual and current expenses of the city. [¶] (e) Covered by particular provisions of law prescribing the manner of its passage and adoption."

[2] Adding to the confusion of this Keystone Cop legislative chase of Cox's sex shop is section 36937 of the Government Code. Most ordinances are not effective until 30 days after passage, except urgency ordinances, which become effective immediately. However, Government Code section 36937, which authorizes urgency ordinances in certain situations, does not authorize urgency zoning ordinances. Under Government Code section 65858 they may only be used to impose a freeze on a project for a limited period of time. Other zoning ordinances must follow Government Code sections 36934 and 65850. (See *Scott* v. *City of Indian Wells* (1972) 6 Cal.3d 541 [99 Cal.Rptr. 745, 492 P.2d 1137].)

At trial, Stanton produced considerable evidence demonstrating the number of locations where adult businesses could operate under the zoning ordinance; Cox disputed each of them. Stanton also introduced evidence concerning the open booth issue and attempted to amend the complaint to allege Earmark's violation of the ordinance. The trial court denied the motion to amend and also denied Stanton's request to permanently enjoin operation of Cox's business. In its brief statement of decision, the trial court ruled Stanton's ordinance "still did not afford defendant Cox a reasonable opportunity to open and operate an adult bookstore and arcades within the City of Stanton." The court also ruled the "ordinance, as amended, is still too restrictive."

On appeal, Stanton contends the court abused its discretion in not permitting the amendment to the complaint and incorrectly applied the recent United States Supreme Court decision in *Renton* v. *Playtime Theatres, Inc.* (1986) 475 U.S. 41 [89 L.Ed.2d 29, 106 S.Ct. 925].

## II

### LEAVE TO AMEND

During the course of trial, the city introduced evidence that Earmark's booths were fully enclosed and not visible from the entrance, all in contravention of the ordinance. Although most of the evidence was presented without objection, the trial court was aware the defense contended the issue was not properly before the court. When the court first indicated it would hear evidence on the subject, counsel for Cox stated, "if the court is going to permit that to be a litigated issue in the case, we're going to have to ask for an opportunity to put on evidence on that particular issue of the booths. We're not prepared to do this today. We don't believe it's properly before the court. It has not been pleaded. It's not part of plaintiff's case." The dialogue between court and counsel continued, and the court acknowledged defense counsel had objected to the evidence in an earlier chambers conference.

At the conclusion of the trial, on October 23, 1986, some 15 months after amending the ordinance to require open visible booths in adult mini-movie arcades and after filing suit, Stanton finally sought leave to amend its complaint to allege that Cox was operating an adult motion picture arcade with fully enclosed booths not visible from the entrance. The trial court denied the motion and ruled in its memorandum of intended decision that it "declines to allow the filing of the amended complaint because although there was no objection to the introduction of evidence therein, the [defendants] did not have an opportunity to attack the pleadings, nor did they expect to

have to prepare to respond to the constitutional issues involved. In its statement of decision, the court concluded, "The original complaint filed by plaintiff did not make any contention with respect to the manner in which the arcade booths were being operated. [¶] Defendants were not properly placed on notice prior to trial as to plaintiff's alleged contentions with respect to the legality of the doors on the arcade booths. The issue was not raised in plaintiff's complaint which contained allegations only relating to zoning violations. [¶] This was not an issue raised in the complaint and the court declines to make a finding on the issue."

■ Code of Civil Procedure section 576 provides that after trial commences, a court "in the furtherance of justice, and upon such terms as may be proper, *may* allow the amendment of any pleading." (Italics added.) This language necessarily implies the trial judge has discretion on whether to permit amendment to pleadings during the course of trial, and scores of cases so hold. (See, e.g., *Trafton* v. *Youngblood* (1968) 69 Cal.2d 17, 31 [69 Cal.Rptr. 568, 442 P.2d 648]; *Weingarten* v. *Block* (1980) 102 Cal.App.3d 129, 134 [162 Cal.Rptr. 701]; *Union Bank* v. *Wendland* (1976) 54 Cal.App.3d 393, 401 [126 Cal.Rptr. 549]; *Stanley* v. *Kawakami* (1954) 127 Cal.App.2d 277, 279 [273 P.2d 709].)

The cases on amending pleadings during trial suggest trial courts should be guided by two general principles: (1) whether facts or legal theories are being changed and (2) whether the opposing party will be prejudiced by the proposed amendment. Frequently, each principle represents a different side of the same coin: If new facts are being alleged, prejudice may easily result because of the inability of the other party to investigate the validity of the factual allegations while engaged in trial or to call rebuttal witnesses. If the same set of facts supports merely a different theory—for example, an easement as opposed to a fee—no prejudice can result. As noted by the court in *Union Bank* v. *Wendland, supra,* 54 Cal.App.3d at p. 401: "[T]he amended pleading must be based upon the same general set of facts as those upon which the cause of action or defense as originally pleaded was grounded." (See also *Brady* v. *Elixir Industries* (1987) 196 Cal.App.3d 1299, 1303 [242 Cal.Rptr. 324].)

■ Here, Stanton amended its ordinance on March 26, 1985, to outlaw enclosed booths. It filed suit against Earmark only two days later, but failed to mention the booth issue or the facts surrounding it and did not attempt to amend its pleading until September 1986. No excuse was offered for the delay. Before this court, Stanton argues that by admitting evidence on the booth issue and by virtue of comments by the court which indicated it anticipated a motion to amend according to proof, the "court misled City into believing the booth issue was properly before it and would be

resolved." One is tempted at this point to quote that eminent philosopher, baseball great Yogi Berra: "The umpire ain't ruled until he's ruled."

The city also argues the defense had ample opportunity to present evidence on the booth controversy during trial but failed to do so. Consequently, the city contends it should not be penalized by the defense oversight. This argument completely misses the point. The reason for the defense "omission" is simple: The complaint did not raise the issue of booth operation. Had it done so, Cox would have been expected to present evidence. Cox's failure to contest an unexpected issue cannot be used by Stanton to justify its tardy attempt to amend. It is impossible to glean from the complaint that the city intended to place these matters in issue. A party who waits 18 months before attempting to amend, and then does so only after trial has commenced, and who offers no excuse for the failure, can hardly complain when the request to amend is denied. Under these circumstances, we cannot say the trial judge abused his discretion.

## III

### THE RENTON ISSUE

Both parties argue that *City of Renton* v. *Playtime Theatres, Inc., supra,* 475 U.S. 41, supports their respective positions. There, a city zoning ordinance which prohibited adult motion picture theaters from locating within 1,000 feet of any residential zone, single or multiple family dwelling, church, park, or school was upheld. The *Renton* court relied on the trial court's findings that the ordinance was not aimed at the content of the films shown but at the secondary effects of such theaters on the surrounding community. It followed *Young* v. *American Mini Theaters, Inc.* (1976) 427 U.S. 50 [49 L.Ed.2d 310, 96 S.Ct. 2440], where a Detroit zoning ordinance which prohibited locating an adult theater within 1,000 feet of any two other "regulated uses" or within 500 feet of any residential zone was held not violative of the First and Fourteenth Amendments.

Justice Rehnquist, writing for the majority in *Renton,* said the "ordinance, like the one in *American Mini Theaters,* does not ban adult theaters altogether, but merely provides that such theaters may not be located within 1,000 feet of any residential zone, single- or multiple-family dwelling, church, park, or school. The ordinance is therefore properly analyzed as a form of time, place, and manner regulation. [Citations.] . . . This court has long held that regulations enacted for the purpose of restraining speech on the basis of its content presumptively violate the First Amendment . . . . [Citations.] On the other hand, so-called 'content-neutral' time, place, and manner regulations are acceptable so long as they are designed to serve a

substantial governmental interest and do not unreasonably limit alternative avenues of communications." (*City of Renton* v. *Playtime Theatres, Inc., supra,* 475 U.S. at p. 46 [89 L.Ed.2d at p. 57].) The *Renton* court concluded, "In our view, the First Amendment requires only that Renton refrain from effectively denying respondents a reasonable opportunity to open and operate an adult theater within the city." (*Id.,* at p. 54 [89 L.Ed.2d at p. 42].)

This criterion was first articulated in *Young* v. *American Mini Theaters, Inc., supra,* 427 U.S. 50. In upholding an ordinance much like Stanton's, Justice Stevens, writing for a plurality, noted that there were many sites where adult businesses could locate under Detroit's ordinance, but that the result would be otherwise if the ordinance "had the effect of suppressing, or greatly restricting access to, lawful speech." (*Id.,* at p. 71, fn. 35 [49 L.Ed.2d at p. 327].)

■ In the instant case, extensive evidence was offered by both sides concerning locations in the city where Cox's business could legally operate. The trial court found Stanton's ordinances "still do not afford defendant Cox a reasonable opportunity to open and operate an adult bookstore and arcade within the City of Stanton. The ordinance, as amended, is still too restrictive." Unfortunately, neither side requested the court's statement of decision to address the question of alternative sites or make findings as to the locations where adult business would be permitted under Stanton's zoning ordinance.

The trial court correctly determined the *Renton* test must be applied to Stanton's zoning scheme. Both sides acknowledge that we are to be guided by the substantial evidence rule. ■ Our task begins and ends with a determination as to whether there is any substantial evidence to support the trial court's finding that Stanton's ordinance as applied to Cox was "too restrictive" under *Renton*'s teachings: "[W]e have no power to judge of the effect or value of the evidence, to consider the credibility of the witnesses, or to resolve conflicts in the evidence or in the reasonable inferences that may be drawn therefrom." (*Overton* v. *Vita-Food Corp.* (1949) 94 Cal.App.2d 367, 370 [210 P.2d 757].) A trial court's determinations will be viewed most favorably to the prevailing party and where the evidence is in conflict, its findings will not be disturbed on appeal. (*Stevens* v. *Parke, Davis & Co.* (1973) 9 Cal.3d 51, 64 [107 Cal.Rptr. 45, 507 P.2d 653, 94 A.L.R.3d 1059]; *Estate of Bristol* (1943) 23 Cal.2d 221, 223 [143 P.2d 689]; *Crawford* v. *Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183]; *Estate of Silverstein* (1984) 159 Cal.App.3d 221, 226 [205 Cal.Rptr. 294]; 9 Witkin Cal. Procedure (3d ed. 1985) § 278, p. 289.)

■ The Stanton ordinance is similar to the one in Renton which prohibited adult businesses within 500 feet of any church, school, park,

playground, or residential area. But unlike Renton's, it *also* prohibits adult businesses within 1,000 feet of each other. Given Stanton's relatively small geographic area (3.5 square miles), this double restriction severely limits the number of locations where an adult business otherwise permitted under applicable zoning ordinances may operate once any one such business opens its doors. Sites theoretically available at the time of trial could vanish overnight.

Against this background, the city planning director testified that under municipal zoning ordinances, adult businesses would be permitted in 5 percent of the geographic area of the city. Coincidentally, this is the same land area which was available in *Renton*. On cross-examination, however, he admitted that railroad rights of way and power line easements were included in his 5 percent calculation. He was unable to testify as to the actual percentage of the city's land area where adult businesses would be permitted. He also acknowledged that once any single adult business located on a specific site, the number of locations where such a business might locate would be further reduced.

Extensive additional testimony was presented by both sides as to specific sites where Cox might locate her store. Stanton's evidence is summarized in its brief. In total, Stanton can point to a total of only six sites where, regardless of availability, Cox could locate her business. Although Cox argued none of these was available, either because of their proximity to residential areas or because other businesses occupied them, we assume the accuracy of Stanton's assessment of available sites.

Ordinances with a requirement that adult businesses be separated by a specific distance from other such businesses have frequently failed to pass constitutional muster if the end result leaves little opportunity for the businesses to operate. (See *Walnut Properties, Inc.* v. *City of Whittier* (9th Cir. 1988) 861 F.2d 1102; *CLR* v. *Henline* (6th Cir. 1983) 702 F.2d 637; *Alexander* v. *City of Minneapolis* (8th Cir. 1983) 698 F.2d 936.) In each of these cases, the ordinance reviewed permitted adult businesses in specified zones, but the separation requirement severely limited the number of sites where one could locate.

In *Walnut Properties,* the ordinance permitted adult businesses in commercial and industrial zones, but prohibited them from locating within 500 feet of residential lots and businesses holding liquor licenses and from within 1,000 feet of schools, churches, parks, or other adult businesses. In its analysis of the ordinance, the court observed that with the separation requirement, the number of acres where adult business was permitted is a meaningless figure. Instead, the court focused on the number of sites avail-

able when considering the city's evidence in the best possible light and concluded that the paucity of alternative sites was so glaring as to make a mockery of constitutional protections. In *Alexander,* only 12 sites were available and in *CLR* only 4. In each case, the theoretical number of permitted sites would have been high if acreage alone was considered, but the separation requirement made so few sites available that the effect was to greatly restrict access to lawful speech. Given the standard the court below must apply to the evidence, we cannot disagree with its findings. We also note that, as to defendant Romano, Stanton did not urge any error concerning the trial court's decision in his favor.

Judgment affirmed. Respondents are entitled to costs.

Crosby, Acting P. J., and Wallin, J., concurred.