Filed 2/3/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| WILLIAM MEYER,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>WILLIAM SHEH,<br><br>    Defendant and Respondent. | B307734<br><br>(Los Angeles County<br>Super. Ct. No.<br>BC673404) |

APPEAL from an order of the Superior Court of Los Angeles County, Malcolm H. Mackey, Judge.  Affirmed.

Salisian Lee, Neal S. Salisian, and H. Han Pai for Plaintiff and Appellant.

Kendall Law, Eileen Kendall; Jeff Lewis Law, Jeffrey Lewis, and Sean C. Rotstan for Defendant and Respondent.

Before a creditor with a money judgment may force the sale of a debtor's dwelling to satisfy that judgment, the creditor must, in addition to other procedures, obtain a court order authorizing the sale.  (Code Civ. Proc., § 704.750, subd. (a).)[1]  To obtain that court order, the creditor must file an application that includes, among other things, "[a] statement of the amount of any liens or encumbrances on the dwelling."  (§ 704.760, subd. (c).)  Does this require the creditor to list liens on the property for unpaid real property taxes, even though those liens need not be recorded because they come into being by operation of law?  We hold that the answer is "yes."  Because the creditor's application in this case did not list the delinquent property taxes against the debtor's dwelling and went so far as to represent, under oath, that "there are no actual or purported liens or encumbrances" on the property, the trial court properly denied the creditor's application as deficient.  We accordingly affirm.

### FACTS AND PROCEDURAL BACKGROUND

I.     **Facts**

William Sheh (William) owns a four-bedroom, single-family home on Villa Rosa Drive in Rancho Palos Verdes, California (the property), along with his wife Lily and another couple, George and Regina Sheh.[2]  William, Lily, George, and Regina hold title to the property as joint tenants.

---

[1]     All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2]     Because these individuals all share the same last name, we will use first names for the sake of clarity.  We mean no disrespect.

By early 2020, the property had two relevant encumbrances. First, the property owners did not pay property taxes to Los Angeles County from fiscal year 2014-2015; the amount of those delinquent taxes, along with applicable penalties and interest, came to $54,788.15 in January 2020, and $55,523.29 in February 2020. Second, the California Franchise Tax Board had recorded four liens against the property in March 2011, February 2013, January 2014, and February 2016 for a total amount of $50,895.58 for taxes owed by Regina.

## II. Procedural Background

### A. *Lawsuit and judgment*

In August 2017, William Meyer (plaintiff) sued William and his business Tectoweld, Inc. (Tectoweld) for (1) various Labor Code violations, such as the nonpayment of wages, the failure to provide itemized statements, and waiting time penalties, (2) breach of contract, and (3) conversion. After William and Tectoweld defaulted, the trial court in May 2019 entered a default judgment against William and Tectoweld in the total amount of $156,906.04, comprised of $79,438.62 in damages plus prejudgment interest, costs, attorney fees, and Labor Code penalties.

### B. *Plaintiff's collection efforts*

On June 4, 2019, plaintiff recorded an abstract of judgment with the Los Angeles County Recorder's Office.

On November 11, 2019, plaintiff filed a request for the trial court to issue a writ of execution on the judgment, which by that time had grown to $173,342.88. On December 3, 2019, the clerk of court issued the writ.

3

On February 21, 2020, the Los Angeles County Sheriff's Department served plaintiff with a notice that a levy was made on the property pursuant to the writ of execution.

On April 27, 2020,[3] plaintiff filed an application for the court to order the sale of William's one-fourth interest in the property to satisfy the outstanding judgment. In an application signed under penalty of perjury, plaintiff's attorney (1) attached an appraisal valuing the property at $1,350,000, and William's one-fourth interest at $337,500, (2) estimated a homestead exemption of $100,000, and (3) represented that "[o]ther than [plaintiff's] judgment lien and execution lien . . ., there are no actual or purported liens or encumbrances on [William's] interest in the Property."

The trial court issued an order to show cause on plaintiff's application and set a hearing date. Following further briefing and a hearing, the trial court denied plaintiff's application because the application did "not contain" the "lien information" "required" by section 704.760—namely, (1) it did not list the

---

[3] Although a creditor has only 20 days from the date of being served with notice of the levy on the debtor's dwelling to file an application for an order for sale of the dwelling (plus five days for service by mail) (§§ 704.750, subd. (a), 684.120, subd. (b)(1)), plaintiff's application—which was filed 66 days after service of the notice—is ostensibly timely due to the COVID-19-related extensions of time for filing. No party has argued to the contrary, and the record does not indicate that the property was released from the levy. (See § 704.750, subd. (a) [if creditor does not timely file application, levying officer shall release dwelling].)

4

property tax liens on the property, and (2) it mischaracterized the effect of the recorded tax liens entered against Regina.[4]

**C.**  *Appeal*

Plaintiff filed this timely appeal.

## DISCUSSION

Plaintiff argues that the trial court erred in denying his application to sell the property because (1) he was not required to list the property tax lien because section 704.760, subdivision (c), only obligates creditors to list *recorded* liens, (2) the trial court should not have considered Regina's encumbrances on the property in its decision to deny the application, and (3) our Legislature's recent amendment to raise the minimum homestead exemption to $300,000 does not apply "retroactively" to his preamendment application (see § 704.730, as amended by Stats 2020, ch. 94, § 1).  As discussed below, our resolution of plaintiff's first argument obviates the need to reach his remaining arguments.  Our review of plaintiff's first argument is de novo because it calls upon us to interpret statutes and to apply the law to undisputed facts.  (*Smith v. LoanMe, Inc.* (2021) 11 Cal.5th 183, 190 [statutory interpretation]; *Boling v. Public Employment Relations Bd.* (2018) 5 Cal.5th 898, 912 [application of law to undisputed facts].)

**I.    Pertinent Law**

**A.    *Regarding the enforcement of money judgments***

California's Enforcement of Judgments Law (the Law) (§ 680.010 et seq.) is a "'comprehensive and precisely detailed scheme' governing enforcement of money judgments" in

---

[4]    William also had filed a motion to set aside the default entered against him.  The court denied that motion in the same order, and William has not cross-appealed that ruling.

5

California.  (*Kono v. Meeker* (2011) 196 Cal.App.4th 81, 86.)  "As a general rule, the Law authorizes a creditor holding a 'money judgment' to 'enforce' that judgment against 'all property of the judgment debtor . . . .'"  (*O'Brien v. AMBS Diagnostics, LLC* (2016) 246 Cal.App.4th 942, 947, quoting §§ 695.010, subd. (a), 669.710.)

When it comes to enforcing a money judgment against the real property that a debtor uses as his "dwelling" (that is, the "place where [he] resides" (§ 704.710, subd. (a))), the Law requires that the creditor adhere to the following procedure.

First, the judgment creditor must record an abstract of judgment with the county recorder's office; doing so creates a judgment lien that attaches to all of the judgment debtor's real property in that county "in excess of the statutory homestead exemption and all liens and encumbrances in existence when the abstract of judgment is recorded."  (§§ 697.310, subd. (a), 697.340, subd. (a), 697.060, subd. (a), 704.950, subd. (c); *Stoffel v. Dutton* (1985) 175 Cal.App.3d 1185, 1188; *Wells Fargo Financial Leasing, Inc. v. D & M Cabinets* (2009) 177 Cal.App.4th 59, 69.)

Second, the creditor must apply for and obtain a writ of execution from the clerk of the trial court; the writ of execution directs the sheriff or other levying officer to enforce the judgment. (§§ 699.510, subd. (a), 699.520; *Kahn v. Berman* (1988) 198 Cal.App.3d 1499, 1508 (*Kahn*).)

Third, the creditor provides instructions and a notice of levy to the sheriff or other levying officer to execute the writ by levying upon the judgment debtor's interest in his dwelling. (§§ 699.530, subd. (a), 699.540, 700.010.)  The sheriff or other levying officer achieves this by recording the writ of execution and notice of levy with the county recorder's office (§ 700.015,

6

subd. (a)) and serving copies of these documents on the debtor (§ 700.010).

Fourth, the creditor must apply for a court order specifically authorizing the sheriff or other levying officer to sell the dwelling. (§§ 704.750, subd. (a), 704.760; *Amin v. Khazindar* (2003) 112 Cal.App.4th 582, 589 (*Amin*).) The application must be "made under oath," and in addition to "describ[ing] the dwelling," must specify: (1) "whether or not the records of the county tax assessor indicate that there is a current homeowner's exemption or disabled veteran's exemption for the dwelling," (2) "whether the dwelling is a homestead and the amount of the homestead exemption [which reserves a statutorily specified amount of equity in a dwelling to the debtor]," and (3) whether the judgment "is based on a consumer debt." (§ 704.760, subds. (a), (b), (d).) Most pertinent here, the application must also specify:

> "the amount of any liens or encumbrances on the dwelling, the name of each person having a lien or encumbrance on the dwelling, and the address of such person used by the county recorder for the return of the instrument creating such person's lien or encumbrance after recording."

(*Id.*, subd. (c).)

Fifth, the trial court reviewing the application must determine whether the fair market value of the judgment debtor's interest in the dwelling is "likely to produce a bid [at the sale] sufficient to satisfy" (1) the amount of the homestead exemption, which was $100,000 at the time plaintiff filed his application in this case and is now a minimum of $300,000 (§ 704.730, subd. (a)), *and* (2) the amount of "all liens and

7

encumbrances" "senior to the [judgment] lien being executed."
(§ 704.780, subd. (b); *Rourke v. Troy* (1993) 17 Cal.App.4th 880, 883-884 (*Rourke*); *Amin*, *supra*, 112 Cal.App.4th at p. 589.) If the proposed sale is unlikely to yield a bid high enough to cover the homestead exemption plus any preexisting liens and encumbrances, leaving no money left over for paying off even a *part* of the judgment creditor's lien, the application should be denied. (*Kahn*, *supra*, 198 Cal.App.3d at p. 1508.) But if the court determines that a bid for the judgment debtor's interest will likely exceed the homestead exemption plus all pre-existing liens and encumbrances, such that there is *some* amount available to satisfy even a "part" of the judgment creditor's lien, then the court *must* grant the application for sale. (§ 740.780, subd. (b); *Rourke*, at pp. 884-885.)

Sixth, the court monitors the bidding. If there is no bid that "exceeds the amount of the homestead exemption plus any additional amount necessary to satisfy all liens and encumbrances on the property," the sale will not go forward. (§ 704.800, subd. (a).) And even if the bid does exceed that threshold amount, if the bid is less than 90 percent of the fair market value of the judgment debtor's interest as determined at the time the application was signed, the judgment creditor must get the court's permission to either accept that bid or hold a new sale. (*Id.*, subd. (b).)

Seventh and finally, if the sales goes through, the proceeds from the sale of the dwelling are distributed in the following order: (1) to the holders of all preexisting liens and encumbrances, (2) to the judgment debtor in the amount of the homestead exemption, (3) to the levying officer for any unpaid

8

costs, (4) to the judgment creditor, and (5) to the judgment debtor if there is any money left over.  (§ 704.850.)

This very detailed procedure was designed to give judgment creditors a viable mechanism to collect on an unpaid judgment lien while also ensuring that "senior liens and encumbrances would be paid"; that "the homeowners," by virtue of the homestead exemption, "will not suffer from additional consequences of their economic misfortune"; and that the purchasers at the sale "will own the property free and clear of all liens and encumbrances."  (*Rourke*, *supra*, 17 Cal.App.4th at p. 885; *Little v. Community Bank* (1991) 234 Cal.App.3d 355, 360 (*Little*).)

### B.    *Regarding real property taxes*

When the county assesses a tax against a property, the imposition of the tax "is a lien against the property assessed." (Rev. & Tax. Code, § 2187.)  The lien attaches by operation of law. (*Long Beach v. Aistrup* (1958) 164 Cal.App.2d 41, 51 (*Aistrup*); *Garcia v. County of Santa Clara* (1978) 87 Cal.App.3d 319, 324 ["A tax on real property becomes a lien against that property"]) What is more, that "lien constitutes an encumbrance on the title to the land" (*Aistrup*, at p. 52; Civ. Code, § 1114), and does so without any prior recording in the county recorder's office. Although the tax collector must wait at least five years before selling a residential property to collect on a tax lien (Rev. & Tax. Code, § 3691, subd. (a)(1)(A)), this "later fixation of the amount of taxes by levy and assessment is but a step in the enforcement *of an already established lien*."  (*Aistrup*, at p. 51, italics added.)

## II.    Analysis

This case presents the question:  Does an unrecorded property tax lien fall within the definition of "any lien[] or

9

encumbrance[] on [a] dwelling" that must be set forth in a judgment creditor's application to sell the dwelling under section 704.760?  We conclude that the answer is "yes," and do so for two reasons.

First and foremost, the plain text of section 704.760 dictates this result.  That statute requires the judgment creditor to set forth "the amount of *any* liens or encumbrances on the dwelling."  (§ 704.760, subd (c), italics added.)  As our Supreme Court has noted time and again, "'any' means 'any.'"  (*People v. Turner* (1990) 50 Cal.3d 668, 704, quoting *People v. Castro* (1985) 38 Cal.3d 301, 310; *People v. Prather* (1990) 50 Cal.3d 428, 434.)  Because it is undisputed that a property tax lien is both a lien *and* an encumbrance by operation of law and without the requirement of recording that lien or encumbrance in the county recorder's office, an unrecorded property tax lien is a "lien or encumbrance on the dwelling" that must be disclosed in the creditor's application.  The plain text of the statute is unambiguous and therefore "controls."  (*Poole v. Orange County Fire Authority* (2015) 61 Cal.4th 1378, 1384-1385 (*Poole*).)

Second, reading section 704.760 to require that unrecorded real property liens be disclosed in an application to sell a dwelling is also consistent with the purpose of that statute. (*Poole, supra*, 61 Cal.4th at pp. 1384-1385 ["'[O]ur task is to select the construction that comports most closely with the Legislature's apparent intent, with a view to promoting rather than defeating the statutes' general purpose . . .'"].)  As noted above, a key purpose of the judgment enforcement procedures section 704.760 operates within is to ensure that "senior liens and encumbrances would be paid" and that the purchasers at the sale "will own the property free and clear of all liens and

10

encumbrances." (*Rourke, supra*, 17 Cal.App.4th at p. 885; *Little, supra*, 234 Cal.App.3d at p. 360.) Allowing a judgment creditor to omit property tax liens from the application would cause trial courts, by virtue of a lack of information, to authorize sales of dwellings where there is insufficient equity to cover those liens— leading to one of two possible outcomes: (1) the sale would extinguish the real property lien without payment to the taxing authority (thereby leaving that senior lien unpaid), or (2) the sale would not extinguish the real property lien and the purchaser would be saddled with that lien (thereby leaving the purchaser with title that is *not* free and clear of all encumbrances). Either result is at odds with the legislative purpose of section 704.760. Plaintiff urges that the priority of tax liens would ensure that such liens would not go unpaid, but this would still saddle the purchaser with those liens; what is more, a rule allowing creditors to ignore tax liens in applying to enforce a judgment against a dwelling would permit a trial court to authorize a sale of a dwelling even when, had the liens been accounted for, there may be no leftover equity for the judgment creditor to acquire after the sale.

Plaintiff responds with two further arguments—one legal, and one factual.

In his legal argument, plaintiff asserts that the plain language of section 704.760, subdivision (c) requires a judgment creditor's disclosure of only those liens and encumbrances that must be recorded. Pointing to the second and third clauses of that subdivision, which requires the judgment creditor to disclose "the name" and "the address of such person used by the country recorder for the return of the instrument creating such person's lien or encumbrance after recording," plaintiff urges that the

11

entire subdivision only applies to *recorded* liens and encumbrances. We disagree. The first clause of the subdivision is crystal clear in its requirement that the judgment creditor disclose "*any* liens or encumbrances on the dwelling." Critically, it does not limit itself to "any *recorded* liens or encumbrances on the dwelling," and we decline to read the second or third clauses as implicitly doing so. Instead, those clauses merely require that name and address information be disclosed as to those liens and encumbrances that happen to be recorded, information that would seem to be wholly unnecessary when the lien is imposed by a public entity with an easily ascertainable name and address, as in the case of a property tax lien. And even if there were some textual ambiguity in the statute, because plaintiff's interpretation would undermine the purpose of the procedures of which section 704.760 is a part, "[a]s between the construction of [a statute] that furthers its purpose and . . . one that undermines it, we must go with the former." (*Rutgard v. City of Los Angeles* (2020) 52 Cal.App.5th 815, 827; *Pineda v. Bank of America, N.A.* (2010) 50 Cal.4th 1389, 1397.) Plaintiff notes that the full amount of the property tax lien (due to ever-accruing interest and penalties) may not be known until that lien is recorded in anticipation of sale, but the same is true of all judgment liens (at least as to the accrual of interest) and this assertion is in any event contradicted by the preliminary title report plaintiff filed with his application which disclosed the current amount of the unpaid tax balance, indicating that this amount *is* knowable.

In his factual argument, plaintiff contends that his application *did* disclose the tax lien because it was mentioned in the preliminary title report accompanying plaintiff's application for an order to sell the property. This is insufficient. Section

704.760 requires the judgment creditor to state, "under oath," the "liens or encumbrances on the dwelling" (§ 704.760, subd. (c)), not merely to include the liens or encumbrances somewhere in its application packet for the court to find on its own. Accepting plaintiff's contention would also lead to mischief, if not outright deception. In this very case, plaintiff's counsel—despite the title report disclosing the existence of the lien, as well as the appraisal report—mispresented, under oath, that there were "no actual or purported liens or encumbrances" on William's "interest in the property." Is a trial court to ignore counsel's sworn representations and hunt through the application for contradictory information? The answer has to be "no."

## DISPOSITION

The order denying the application for sale is affirmed. William is entitled to his costs on appeal.

**<u>CERTIFIED FOR PUBLICATION</u>.**


_____, J.
HOFFSTADT


We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ

13