Filed 5/31/22  Marriage of Guadagno CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| In re Marriage of MARY ANN GUADAGNO and ROBERT JAMES GUADAGNO. | 2d Civil No. B312904 (Super. Ct. No. 1263407) (Santa Barbara County) |
| MARY ANN GUADAGNO, Respondent, v. ROBERT JAMES GUADAGNO, Appellant. | |

Robert James Guadagno (Robert) appeals a postjudgment order directing him to sell property and use the proceeds to pay Mary Ann Guadagno (Mary) the balance of an equity line of credit (LOC) plus interest and attorney fees.

Robert argues the trial court lacked jurisdiction to render the order. We affirm.[1]

## FACTUAL AND PROCEDURAL HISTORY

The parties were married in 1974. In 2007, Mary petitioned for a dissolution of marriage from Robert. The judgment of dissolution incorporated the parties' marital settlement agreement (MSA).

Pursuant to the MSA, Robert and Mary would each receive 50% of the real property located on Miramonte Drive in Santa Barbara (Miramonte home), 50% of the real property located on Chinook Drive in Ventura (Chinook home), and 50% of the proceeds from the anticipated sale of the real property located on Reef in Oxnard (Reef home). Robert was awarded temporary exclusive use and control over the Chinook home and Mary was awarded temporary exclusive use and control over the Miramonte home. Each were responsible for "all payments associated with the [respective] residence[s]. This includes, but is not limited to, mortgage payments, taxes and house insurance."

The MSA provided: "The Court retains jurisdiction (except as otherwise provided in this Judgment) to make orders and determinations that are necessary and/or appropriate (i) to enforce any of the terms of this Judgment or otherwise effectuate the division of property as specified in the Judgment; (ii) to resolve any matter subject to the jurisdiction of the Court that has not otherwise been resolved by the terms of the Judgment, or to resolve any dispute that may arise concerning the terms of the

---

[1] Mary moved to dismiss the appeal based on the disentitlement doctrine. We deny the motion and address the appeal on the merits.

Judgment; and (iii) to resolve claims regarding omitted or undisclosed property and obligations."

The MSA further provided: "In addition to specific reservations of jurisdiction over particular assets or other matters state[d] elsewhere in this Agreement, the Court in this case shall retain the broadest possible general jurisdiction to resolve all disputes between the parties arising from the marital rights or this Agreement . . . . Each consents to full personal and subject-matter jurisdiction and no separate proceedings shall be required. If any are to be filed, they shall immediately be consolidated with the dissolution proceedings, and any issues raised in them may be presented by motion in the matrimonial proceedings."

In 2013, the parties agreed to "amend, update and confirm" the MSA. The "Amendment and Confirmation as to Marital Settlement Agreement" (Amended MSA) provided that the Miramonte home would be "confirmed" to Mary. Robert executed a deed conveying the Miramonte home to Mary. As to the Chinook and Reef homes, Mary agreed to execute deeds conveying her "right, title and interest" in these homes to Robert. The Amended MSA also included provisions addressing a LOC in the amount of $198,874.52 which was previously omitted from the MSA. The LOC was secured by the Miramonte home. The Amended MSA states that Robert "acknowledges and agrees to pay and be solely obligated to pay the monthly installment payment and the principal amount as it becomes due on the line of credit . . . in the approximate amount of $200,000. The LOC is secured by the Miramonte Property. [Robert] reaffirms he is solely responsible for the principal and accruing interest on the LOC . . . ."

3

In 2017, Mary filed a request for order directing Robert to sell or refinance the Chinook and Reef homes to remove Mary's name from the mortgage loans on those properties. Mary declared that Robert did not pay the mortgage payments on the Chinook and Reef homes, and as a result, she suffered financially. Mary also declared that she sold the Miramonte home and paid off the LOC.

The trial court granted Mary's request and ordered Robert to sell both properties. He was ordered to list the properties with a realtor no later than March 1, 2018.

In 2018, Mary filed a request for an order directing Robert to sell the Chinook home and to pay her $198,874.52 from the proceeds of the sale. Mary declared she received a letter stating that Robert sold the Reef home in June 2017 to a private party, who would be paying Robert and Mary's underlying mortgage directly.

In September 2018, the parties stipulated that Robert owed Mary $198,874.52, and that Robert "shall sign a promissory note and deed of trust on the Chinook property in the amount of $198,874.52 to formalize MARY's security interest." Robert was to pay Mary a $2,000 down payment, and thereafter make minimum payments of $400 each month for four years. The stipulation provided that if Robert failed to satisfy these terms, "then the [Chinook home] shall, within 5 days of written notice by MARY, be immediately listed for sale, with any net sales proceeds used to pay MARY." The stipulation also provided that if "either party is required to bring a future action in order to enforce his or her rights . . . then the prevailing party shall be entitled to attorney's fees and costs."

4

In 2021, Mary filed a request for an order seeking to enforce the terms of the September 2018 stipulation. She also requested attorney fees pursuant to the stipulation. She declared that Robert did not make all the required payments and that he had not refinanced the property to remove Mary from the mortgage, despite having more than two years to do so.

In his response, Robert admitted that he agreed to the Amended MSA and the 2018 stipulation. He also admitted that the LOC in the amount of $198,874.52 was used to develop the Reef home and that he had agreed to reimburse Mary that amount.

The trial court ordered Robert to sell the Chinook home, use the sale proceeds to repay Mary the remaining balance of the LOC plus interest, and pay Mary's attorney's fees.

Robert petitioned this court for a writ of supersedeas, seeking an immediate stay of the trial court's 2021 order. We summarily denied his petition.

## DISCUSSION

Robert contends the trial court lacked jurisdiction to modify the final judgment of marital dissolution and order the sale of the Chinook home and payment of the LOC balance owed to Mary. We disagree.

Generally, once a marital dissolution judgment becomes final, the court does not have jurisdiction to modify it. (*In re Marriage of Thorne & Raccina* (2012) 203 Cal.App.4th 492, 499.) An exception occurs when a judgment contains an express reservation of jurisdiction authorizing the court to subsequently modify it. (*Id*. at p. 500.) Where, as here, the MSA was incorporated in the marital dissolution judgment, we apply the general rules of contract interpretation to construe the intent of

5

the parties at the time they entered into the MSA. (*Id*. at p. 501.) We determine the parties' intent from the plain language of the contract, the words being understood in their ordinary and popular sense. (*Id*. at p. 502.)

Here, the MSA states that the court would retain jurisdiction "to make orders and determinations that are necessary and/or appropriate . . . to resolve any matter subject to the jurisdiction of the Court that has not otherwise been resolved by the terms of the Judgment . . . and . . . to resolve claims regarding omitted or undisclosed property and obligations." Thus, the plain language of the MSA shows the parties' intent to allow the court to resolve omitted debts such as the LOC.

Moreover, the language of the MSA shows the parties' intent to broadly allow the court "to make orders and determinations that are necessary . . . to enforce any of the terms of this Judgment" and "to resolve any dispute that may arise concerning the terms of the Judgment." The MSA expressly provided that the court "shall retain the broadest possible general jurisdiction to resolve all disputes between the parties arising from the marital rights or this Agreement."

These provisions show the parties' intent to allow the court to make orders to resolve disputes arising from the MSA's terms, including those relating to Robert's obligations to pay the debt evidenced by the LOC. The terms of a judgment of dissolution "may be enforced by the court by execution, the appointment of a receiver, or contempt, or by any other order as the court in its discretion determines from time to time to be necessary." (Fam. Code,[2] § 290.) Directing the sale of the

---

[2] Further unspecified statutory references are to the Family Code.

Chinook home constitutes an order enforcing Robert's obligations pursuant to the MSA.

Another exception to the general rule prohibiting modification of a marital dissolution judgment is that a "trial court may divide a community property asset not mentioned in the judgment." (*In re Marriage of Thorne & Raccina, supra*, 203 Cal.App.4th at p. 500.)  Section 2556 provides that the court retains "continuing jurisdiction to award community estate assets or community estate liabilities to the parties that have not been previously adjudicated by a judgment in the proceedings.  A party may file a postjudgment motion or order to show cause in the proceedings in order to obtain adjudication of any community estate asset or liability omitted or not adjudicated by the judgment."

Here, the record shows the LOC was omitted from the judgment.  The MSA does not mention the LOC, the proceeds of which were used to pay for the development of the Reef home.  Therefore, the trial court retained jurisdiction to adjudicate the parties' rights and obligations related to the LOC.  (§ 2556.)

Robert relies on *Tuve v. Tuve* (1969) 270 Cal.App.2d 79, 83, in which a court order directing sale of a property and payment of fire insurance proceeds was reversed because the divorce judgment did not reserve the court's jurisdiction to do so.  Because the judgment did not expressly include a reservation of jurisdiction, the plaintiff was required to bring another action to obtain relief.  (*Ibid*.)

This case is distinguishable from *Tuve, supra*, 24 Cal.App.2d 79 because the MSA here expressly reserved jurisdiction to allow the court to resolve issues regarding omitted obligations, and the court had statutory jurisdiction over the

7

omitted debt. (§ 2556.) Thus, Mary was not required to bring a separate action.

Robert relies on *Hyatt v. Mabie* (1994) 24 Cal.App.4th 541 (*Hyatt*), to argue that Mary waived her claim when she paid the LOC from the proceeds of the Miramonte home sale. But *Hyatt* is distinguishable. In *Hyatt*, the judgment of dissolution directed the sale of "the Citrus Heights residence" owned by the couple, and the net proceeds were to be equally divided between the parties. (*Id*. at p. 544.) Months after the judgment, the wife discovered that the husband had secured a promissory note against the Citrus Heights residence. (*Ibid*.) Despite knowing about the note, the wife instructed escrow to proceed with the sale and to use the proceeds to pay off the note. The residence sold, the third party creditors were paid in full, and the deed of trust was reconveyed. Thereafter, the wife sued the third party creditors for repayment of the note.

The trial court ruled in favor of the third party creditors. (*Hyatt*, *supra*, 24 Cal.App.4th at p. 545.) The Court of Appeal affirmed, finding that the wife waived her remedy when she chose to continue with the sale of the Citrus Heights residence instead of seeking a modification of the divorce judgment to adjust the division of property to take the newly discovered promissory note into account. (*Id*. at p. 547.)

Unlike the wife in *Hyatt*, *supra*, 24 Cal.App.4th 541, Mary here did not seek reimbursement from a third party creditor. Rather, she sought reimbursement directly from Robert for a debt omitted from their divorce judgment. The sale of her home and payment of the LOC from the proceeds thus did not waive her claim to repayment of that debt.

8

Finally, Robert argues that the homestead exemption applies. The homestead exemption allows a judgment debtor to protect their home from a forced sale by creditors. (Code of Civ. Proc., § 704.720; *Amin v. Khazindar* (2003) 112 Cal.App.4th 582, 588 (*Amin*).) An automatic homestead exception applies when "'a party has continuously resided in a dwelling from the time that a creditors' lien attaches until a court's determination in the forced sale process that the exemption does not apply.' [Citations.]" (*Ibid.*)

Robert did not raise the homestead exemption in his pleadings and raised the issue for the first time at the hearing on Mary's request for order. The trial court did not make an explicit ruling on the homestead exemption or make any of the necessary factual findings to resolve that issue, including whether the exemption applied, the amount of the homestead, and value of the property. (See *Amin, supra,* 112 Cal.App.4th at p. 591.) Robert did not request a ruling on the homestead issue or otherwise object. His failure to do so forfeited this issue on appeal. (See (2010) 188 Cal.App.4th 1120, 1127.)

## DISPOSITION

The 2021 order directing sale of the Chinook home, repayment of the balance of the LOC to Mary with the sale proceeds, and payment of Mary's attorney's fees is affirmed. Mary shall recover costs on appeal.

NOT TO BE PUBLISHED.


TANGEMAN, J.


We concur:


GILBERT, P. J.


YEGAN, J.

Thomas P. Anderle, Judge

Superior Court County of Santa Barbara

_____

Law Offices of James T. Studer, James T. Studer; and David R. LeRoy for Appellant.

Jarrette & Walmsley, Robert R. Walmsley and Marlea F. Jarrette for Respondent.