Filed 3/22/18

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| FRANKLIN ENG,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>MICHAEL PATRICK BROWN et al.,<br><br>    Defendants and Respondents. | D071773<br><br><br>(Super. Ct. No. 37-2011-102213-CU-MC-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Katherine A. Bacal, Judge.  Affirmed.

Fischbach & Fischbach, Joseph S. Fischbach and Katharine B.K. Lau on behalf of Plaintiff and Appellant.

Law Offices of Edwin Paul and Edwin Paul and Margie L. Jesswein on behalf of Defendants and Respondents.

Plaintiff Franklin Eng appeals a judgment in favor of defendants Michael Patrick Brown and Gerald Levy following a jury trial.  Eng claimed that Brown and Levy breached their fiduciary duties to him as purported partners or joint venturers in the

ownership and operation of the Tin Fish Gaslamp, a seafood restaurant in San Diego. The jury found that Eng, Brown, and Levy entered into a partnership or joint venture, but it was terminated when they formed a corporation, B.L.E. Fish, Inc. (B.L.E. Fish), to purchase and operate the restaurant. Eng's claim for breach of fiduciary duty based on a partnership or joint venture was therefore unsupportable.[1]

Eng contends, among other things, that (1) the trial court erred by denying his request, in a motion in limine, that the court find that the parties created a partnership as a matter of law; (2) the court erred by denying his motion in limine seeking to exclude any evidence or argument that B.L.E. Fish merged with or superseded the partnership; (3) the court erred by granting Brown and Levy's motion to amend their answer to assert an affirmative defense based on merger or supersession; (4) the court erred by denying Eng's motion for directed verdict; (5) the court committed instructional error (and a related error in the special verdict) regarding merger and supersession; (6) the court erred in its response to a juror question during deliberations; (7) the court erred by denying Eng's motion to amend his complaint to add a claim for breach of fiduciary duties based on the parties' corporate relationship; (8) the court erred by denying Eng's motion to strike the testimony of a defense expert witness; and (9) the court erred by denying Eng's ex parte application for the release of juror contact information. For reasons we will explain, we reject Eng's contentions and affirm.

---

[1]     The parties refer to both partnership and joint venture relationships, but the distinction between the two types of associations is immaterial to this appeal. We will therefore focus on partnership, as do the parties.

2

FACTUAL AND PROCEDURAL BACKGROUND

"As required by the rules of appellate procedure, we state the facts in the light most favorable to the judgment." (*Orthopedic Systems, Inc. v. Schlein* (2011) 202 Cal.App.4th 529, 532, fn. 1.) Additional facts will be discussed where relevant in the following sections.

Eng and Levy, both licensed real estate agents, worked together and became close personal friends. In 2006, Levy listed the Tin Fish Gaslamp restaurant for sale on behalf of its owner. Later that year, Eng and Levy decided to purchase the Tin Fish Gaslamp themselves, along with Brown, who is Levy's nephew. They agreed that Brown would own a majority of the business, 56.667 percent, with Levy owning 33.333 percent and Eng 10 percent.

The group made an offer to purchase the Tin Fish Gaslamp. The offer was made by Brown "[and] or assignee," which was identified only as an entity "to be determined." In the notes, the offer stated that "Agent Jerry Levy will act as a principle [*sic*] in this transaction" and "one of the principles [*sic*] is also a licensed . . . California real estate agent." The seller accepted the group's offer. Escrow was opened, but the group was unable to secure financing.

In January 2007, the group resubmitted an offer to purchase the Tin Fish Gaslamp. The offer was made in the names of Brown and B.L.E. Fish, which had been incorporated the same day. B.L.E. Fish was identified in the offer as a corporation. The offer made the same agent disclosures as the prior offer. The seller again accepted. The parties drafted revised escrow instructions, which also identified B.L.E. Fish as the buyer.

3

Later that month, Brown and Levy held an organizational meeting for B.L.E. Fish, adopted bylaws, elected corporate officers and a board of directors (all positions being filled by Brown and Levy), and approved the issuance of 100 shares of stock. The directors approved a proposal for B.L.E. Fish to purchase and operate the Tin Fish Gaslamp restaurant. Two months later, Brown, Levy, and Eng signed an election by B.L.E. Fish to be an S corporation under the Internal Revenue Code. Around the same time, Levy filed a fictitious business name statement on behalf of B.L.E. Fish. The statement identified the Tin Fish Gaslamp name, described the business as being conducted by a corporation, and noted that the business had not yet started.

In April 2007, escrow closed and B.L.E. Fish purchased the Tin Fish Gaslamp business for $1.6 million. The next month, Brown, Levy, and Eng executed a management agreement. It stated, in relevant part: "This management agreement designates corporate officers, Michael P. Brown and Gerald W. Levy[,] the exclusive authority to oversee the restaurant business and all daily operations of Tin Fish Gaslamp. B.L.E. Fish, Inc. authorizes only the two corporate officers, Mike Brown and Gerald Levy[,] to make all decisions for the restaurant on behalf of B.L.E.[,] Fish Inc." The agreement stated that it would "remain in full force and affect [*sic*] with the authority of the following corporate shareholders until which time the agreement is amended." Brown's, Levy's, and Eng's signatures appear below that statement.

Brown transferred the outstanding shares of B.L.E. Fish to himself, Levy, and Eng in proportion to their ownership interests, with Brown receiving 56.667 shares, Levy 33.333 shares, and Eng 10 shares. Eng had a business card describing him as an "owner"

4

of the Tin Fish Gaslamp. B.L.E. Fish holds annual shareholder and director meetings, maintains corporate financial records, files corporate income taxes, and provides its shareholders with income statements consistent with its S corporation status.

From 2007 through 2010, Eng received approximately $160,000 in distributions from B.L.E. Fish. In 2010, Brown and Levy began to manage the business on a full-time basis. They took salaries as corporate officers and retained a management company they controlled to oversee operations. B.L.E. Fish agreed to pay the management company a percentage of gross sales in exchange for its services. These salaries and management fees were paid before shareholder distributions were calculated. Based in part on these additional expenses, Eng received no distributions in 2011.

Eng retained counsel and filed suit against Brown, Levy, and B.L.E. Fish. Eng alleged that he formed an oral joint venture with Brown and Levy to purchase and operate the Tin Fish Gaslamp. They agreed that Brown and Levy would manage the restaurant and receive a management fee of three percent of gross sales. Eng would own 10 percent of the joint venture, with Brown and Levy owning 57 percent and 33 percent, respectively. Eng alleged that the parties agreed to form an S corporation that would be owned by the joint venture for tax and liability reasons. However, according to Eng, the parties were to remain partners as to each other. Eng further alleged that Brown and Levy had conspired to reduce his distributions by padding the payroll, taking large officers' salaries, and doubling the agreed-upon management fee.

Eng asserted causes of action for (1) partnership dissolution and accounting, (2) constructive fraud, and (3) conversion. Eng's constructive fraud cause of action was

5

based on breaches of fiduciary duties owed to Eng "[b]y virtue of the joint venture agreement." Eng alleged, in relevant part, as follows: "Defendants breached their fiduciary duty to Plaintiff and violated the relationship of trust and confidence by excluding Plaintiff from his interest in the joint venture business and assets and by securing an advantage over Plaintiff by misleading Plaintiff to his prejudice, by misappropriating approximately $400,000 in operating profits, by intentionally hiding plaintiff's K-1, by refusing to allow Plaintiff's daughter to use his in-store credit, and other acts . . . ." Eng later filed a first amended complaint (FAC), which added an "alternative" cause of action for involuntary dissolution of a corporation and an "alternative" shareholder derivative claim for breach of fiduciary duty against Brown and Levy on behalf of B.L.E. Fish. Eng stated he would pursue the derivative claim "if and only if the Court should find[] that the wrongful conduct hereinabove alleged belongs to the Corporation and not to the joint venture . . . ."

Brown and Levy filed a demurrer to the FAC on the ground that it did not state facts sufficient to constitute any cause of action. Among other things, they argued that no partnership or joint venture existed among the parties. In addition, they argued, "Even if Plaintiff is correct in asserting the parties were joint venture partners prior to the formation of the corporation, the general rule is well established that a partnership does

6

not continue to exist after the formation of a corporation." They repeated this argument in their reply.[2]

Eng dismissed his cause of action for involuntary corporate dissolution, and the court sustained defendants' demurrer as to Eng's cause of action for conversion. Eng later dismissed B.L.E. Fish as a defendant, and the court struck its answer to Eng's complaint. Eng appealed the court's order. In an unpublished opinion, this court dismissed Eng's appeal. (*Eng v. B.L.E. Fish, Inc.* (Sept. 21, 2015, D066054).) This court concluded that Eng misinterpreted the trial court's order, and B.L.E. Fish remained a nominal defendant to Eng's shareholder derivative claim.

Prior to trial, the parties filed a number of motions in limine. One of Eng's motions in limine sought to exclude any evidence or argument relating to a shareholder derivative claim. Eng asserted that any breach of fiduciary duty, whether by partners or majority shareholders, would be individual to him and therefore not derivative. At the hearing on Eng's motion in limine, the court asked whether, given his motion, Eng wanted to dismiss the shareholder derivative claim in his FAC. Eng responded affirmatively. His counsel explained, "We don't want any money for the corporation or from the corporation. So to me this is not even remotely a derivative action and I apologize. The pleading in this case has been a nightmare from day one. . . . But we

---

[2]    Brown and Levy made the same argument again in their later motion for summary judgment. The court acknowledged this argument but determined that triable issues of fact remained "as to whether the corporation was formed to carry out a preincorporation agreement" and therefore the partnership continued to exist notwithstanding the corporation's formation.

are—we would like to proceed on a straight breach of fiduciary duty, constructive fraud cause of action regardless of the capacity because we will not ask for any money to go back to the corporation." At Eng's request, therefore, the court dismissed his shareholder derivative claim.

A defense motion in limine sought to exclude any evidence or argument that Brown and Levy breached their fiduciary duties as majority shareholders or corporate officers because such a claim was not alleged in the FAC. Brown and Levy pointed out that Eng's constructive fraud cause of action was based on fiduciary duties imposed "by virtue of the joint venture agreement" rather than any corporate relationship. They noted that, notwithstanding this allegation, Eng had proposed jury instructions regarding corporate fiduciary duties (and, as noted, his motion in limine seemed to equate the two). Brown and Levy requested that the court determine that such a claim was outside the pleadings and not at issue in the trial. The court tentatively granted the motion, noting, "The pleadings frame the case." Although Eng's counsel indicated he wanted to argue the tentative, it does not appear any further argument occurred. The parties and the court moved on to other trial matters. (The court later stated that its recollection was that it would tentatively *deny* the motion without prejudice to objections made at trial.)

Eng brought another motion in limine, denominated number two, that sought to exclude any evidence or argument that (1) a partnership was not formed to purchase the Tin Fish Gaslamp restaurant or (2) B.L.E. Fish superseded the partnership. Eng's first request essentially sought a finding that the parties formed a partnership as a matter of law when they decided to purchase the restaurant. At the hearing on Eng's motion, the

8

parties agreed that the court should hold a hearing under Evidence Code section 402 to determine whether a partnership was formed as a matter of law. During that hearing, Levy testified regarding the group's interest in the Tin Fish Gaslamp, the two offers the group made to purchase the restaurant, and B.L.E. Fish's operation of the restaurant. Eng argued, on the basis of this testimony, that a partnership was formed as a matter of law because the group agreed to purchase the Tin Fish Gaslamp and operate it for profit. The court disagreed. It explained, "I understand the interest in reaching a resolution of this question. However, I do not believe the answer is indeed an answer that can be given as a matter of law. I would note that generally whether or not a partnership has been formed is, in fact, a question of fact." The court found the facts in dispute regarding whether the parties intended to form a partnership or a corporation and, further, whether any partnership was superseded by the formation of a corporation. It therefore denied Eng's request to find a partnership as a matter of law and denied Eng's motion in limine.

The next day, Eng asked the court to reconsider the second part of his motion in limine, i.e., his request to exclude evidence and argument that the corporation superseded the partnership. Eng argued that supersession was an affirmative defense that was not pled in defendants' answer. Defendants therefore could not raise it at trial. The court, apparently believing the issue of supersession to be a defense, but not an affirmative defense, denied the motion.

Eng presented his case to the jury. He called Levy as his first witness, who again testified regarding the Tin Fish Gaslamp purchase, the formation of B.L.E. Fish, and the restaurant's operations and finances. Levy denied ever discussing forming a partnership

9

with Eng and Brown. Brown testified as well. He said that he always intended that the business would be a corporation. The group never discussed any entity other than a corporation purchasing the business. Eng also called Peter Wrobel, a certified public accountant, whom he retained to estimate his damages and identify indications of possible financial fraud at B.L.E. Fish. B.L.E. Fish's accountant and a potential investor in the Tin Fish Gaslamp purchase also testified.

Eng testified on his own behalf. He said he initially believed he would be an "equal partner" with Brown and Levy, but he agreed to reduce his share to 10 percent. He denied discussing the formation of B.L.E. Fish with Brown or Levy prior to the first or second offer to purchase the Tin Fish Gaslamp. However, they had general discussions that it might be purchased by a limited liability company or another type of entity. He said he first learned that B.L.E. Fish had been formed in the month after the second offer had been submitted. Levy told him it would be an S corporation for limited liability and tax reasons.

During Eng's testimony, his counsel attempted to resolve certain pleading issues. Eng dismissed his first cause of action, for partnership dissolution and accounting. Only his claim for constructive fraud based on a breach of fiduciary duty remained. Eng then moved to amend his complaint to conform to proof. He wanted to add allegations to the complaint that "the actions of the defendants in addition to violating their trust and confidence in the overall relationship also violated their fiduciary duties as shareholders—majority shareholders, the only directors and the only corporate officers with authority." The court asked why Eng had not sought to amend his complaint earlier,

10

"when [he] received either the demurrer or the motion for summary judgment, both of which argued the partnership was superseded by a corporation." Eng's counsel did not provide an explanation for the delay, other than his belief that the supersession argument was not meritorious. The court took the motion under submission.

Later the same day, the court indicated that its tentative inclination would be to deny the motion to amend because the salient facts were known to Eng years before. Eng argued that the conduct at issue was the same as alleged in the complaint, the only difference being whether the fiduciary duties arose from a partnership relationship or a corporate relationship. Eng pointed to the joint statement of the case, which stated that Eng sued Brown and Levy "asserting that they have breached their duties as partners or majority shareholders in a corporation." The court agreed to look at the issue again. It asked Eng to prepare and file a proposed amended complaint for the court to examine.

After examining the proposed pleading, the court deferred ruling on the motion to amend until the conclusion of trial. The court recounted the history of the litigation, including the pleading amendments and dismissals. It noted that Eng had brought a number of motions in limine, including several seeking pleading amendments, but they did not raise the issue of fiduciary duties based on a corporate relationship. It further noted that Brown and Levy sought to exclude all evidence or argument regarding such duties, but Eng still did not seek leave to amend. The court recognized Brown and Levy's argument that they would have tried the case differently if corporate fiduciary duties had been at issue and that any such claim would only be derivative on behalf of B.L.E. Fish and not individual to Eng. The court believed, however, that "the question does not need

11

to be decided by the Court prior to the matter being submitted to the jury because a minority shareholder action for damages for breach of fiduciary duties of the majority shareholder is a matter in equity and there is no right to a jury trial." The court therefore proposed that the factual issue of the alleged breaches be submitted to the jury for an advisory verdict. The court explained, "If it appears from the evidence presented and the [jury's] verdict that . . . this [claim was] incidental to an injury to the corporation, or plaintiff's stock was the only stock affected adversely,[3] it would find that the claim is a claim that could be brought only by the corporation [and,] as the shareholder derivative case was dismissed, the amendment would be denied. If the claim is a claim that could be brought individually, then the Court will consider a further bench trial on that matter only. There will be no instructions to the jurors on the claimed breach of the majority to minority shareholders."

In the meantime, the defense case began with additional testimony from Brown and Levy. They also called Thomas Lambert, a certified public accountant, who testified that Brown's and Levy's compensation was in line with industry standards and Internal Revenue Service (IRS) regulations, that the fees paid to their management company were reasonable, and that IRS rules require B.L.E. Fish to pay Brown and Levy for their services as active employees of the corporation.

---

3     The court appears to have misspoken. A claim generally belongs to the corporation, rather than the individual, if the claim is incidental to an injury to the corporation or a plaintiff's stock was *not* the only stock affected adversely, i.e., the whole body of stock was affected. (See *Jones v. H.F. Ahmanson & Co.* (1969) 1 Cal.3d 93, 106-107; *Sole Energy Co. v. Petrominerals Corp.* (2005) 128 Cal.App.4th 212, 233.)

Eng moved to strike Lambert's testimony "because there has been no basis for these opinions because they are not related to anything that Mr. Wrobel said or did." Brown and Levy opposed, arguing that Lambert's opinions were properly admissible as expert opinion testimony. The court denied the motion.

Following the conclusion of the defense case, Eng moved for a directed verdict on "the defense of . . . a corporation superseding a partnership . . . ." Eng's counsel argued that Brown and Levy did not introduce evidence that "we formed B.L.E. [Fish] and we specifically decided to get rid of our partnership and act only in a corporate form." Eng's counsel asserted that they had "a pre-incorporation agreement to run the Tin Fish as a corporation and that's all I've ever alleged, and that's the cubbyhole I'm stuck with, and I'm fine going to the jury with that. [¶] [T]he only evidence they have is there was no pre-incorporation agreement, it was always a corporation. . . . [¶] So I would like a directed verdict on the issue of the partnership with the pre-incorporation agreement that has survived. And it has nothing to do with B.L.E. Fish, Inc., because that was the agreement."

The court asked why Eng wanted to amend his complaint if his case had nothing to do with B.L.E. Fish. Eng's counsel responded, "Out of an abundance of caution only." Eng's counsel believed "[t]he fiduciary duties of a director, officer, whatever as part of the pre-incorporation agreement are co-extensive. [¶] In other words, it's not a separate fiduciary duty from the partnership. It's all part of one thing . . . ." The court asked Eng's counsel to confirm that he was "not asserting a breach of fiduciary duty, minority shareholder to majority shareholder, because it's your position that the breach of fiduciary

13

duty is the breach of partner to partner fiduciary duty, [with the] corporation only being a vehicle for the partnership." Eng's counsel accepted the court's formulation, adding only the "qualification" that Brown and Levy did breach their fiduciary duty based on their management activities. But, Eng's counsel said, "I think that [defense counsel's] argument is that once the corporation superseded the partnership in his view, there are no more fiduciary duties owed because we didn't allege it. *That I don't dispute*." (Italics added.) What Eng did dispute was that the corporate form somehow immunized Brown and Levy for their activities.

Based on this description of Eng's claims, the court denied his motion to amend. It explained: "There is no basis to go forward with a breach of fiduciary duty claim, corporate minority shareholder to majority shareholder, even if the two bases on which that might have been asserted directly by an individual were established[,] given the representation now that [the] argument is all of those fiduciary duties [were] the fiduciary duties owed as partner[s]." Eng's counsel responded, "I guess that pretty well sums it up."

Returning to Eng's motion for a directed verdict, the court discussed with the parties who would have the burden of proof of showing that the corporation superseded the partnership. The next day, the court modified its previous view of the parties' respective burdens. It now concluded that, while the plaintiff has the burden of proving the existence of a partnership and its terms, the defendants have the burden of proving that the corporation superseded the partnership. Importantly, among the terms that plaintiff had to prove were "that any pre-incorporation agreements were agreed to

14

continue post-incorporation," i.e., the parties agreed to continue the partnership notwithstanding the formation of the corporation.

While Brown and Levy had not pled supersession as an affirmative defense, the court stated it would allow an amendment to their answer because there could be no prejudice. The court explained: "Plaintiff previously has been put on notice that that was a defense that defendant was asserting and the facts hav[e] been taken in evidence." The court rejected Eng's argument that he would have tried the case differently: "[Y]ou've been arguing that all along that . . . you knew or at least knew in part that there was a corporation. Plaintiff has been arguing all along that the partnership did not—was not subsumed by the corporation. There's nothing new here." The court granted leave to amend Brown and Levy's answer and denied Eng's motion for directed verdict on the affirmative defense of supersession.

The parties struggled to draft jury instructions describing their respective burdens on the issue of supersession. The court suggested the following special instruction: "[I]f a partnership is incorporated, the partnership merges into the corporation and the partners cease to be partners and have only the rights, duties and obligations of shareholders." Eng disagreed. His counsel suggested, "Defendants have the burden of proof to you concerning their argument that the parties intended that B.L.E. Fish, Inc. would supersede and terminate their partnership." The court rejected Eng's formulation. It noted that it was "plaintiff's burden to show . . . that the corporation was formed to carry out a pre-incorporation agreement." When Eng's counsel agreed, the court suggested that the special instruction say exactly that. Eng's counsel again agreed. Eng's counsel then

15

suggested a second part, reflecting the affirmative defense: "If plaintiff meets his burden, it then becomes the burden—the burden of proof of the defendant to prove to you that the corporation superseded and/or terminated the partnership." After further discussion, the parties agreed on the following instruction, which was provided to the jury: "It is plaintiff's burden to prove that the corporation was formed to carry out a pre-incorporation agreement. If plaintiff meets his burden of proof, it is defendants' burden of proof to prove that the partnership was superseded by the corporation." The parties referred to this instruction as Special Instruction No. 24.[4]

---

[4] The jury was instructed on the existence of a partnership using CACI No. 3711, as follows: "You must decide whether a partnership existed in this case. A partnership is a group of two or more persons who own a business in which all the partners agree to share the profits and losses. A partnership can be formed by a written or oral agreement or by an agreement implied by the parties' conduct." Similarly, the jury was instructed with CACI No. 3712 regarding the existence of a joint venture: "You must decide whether a joint venture was created in this case. A joint venture exists if all the following have been proved. One, two or more persons or business entities combined their property, skill or knowledge with the intent to carry out a single business undertaking. Two, each has an ownership interest in the business. Three, they have joint control over the business even if they agree to delegate control. And, four, they agree to share the profits and losses of the business. [¶] A joint venture can be formed by a written or an oral agreement or by an agreement implied by the parties' conduct." The jury was also instructed on the existence and breach of fiduciary duties using CACI No. 4102, as follows: "Franklin Eng claims he was harmed by defendants Brown and Levy's breach of the fiduciary duty of loyalty. A partner and joint venturer owes their partners and joint venturers undivided loyalty. To establish this claim, Franklin Eng must prove all of the following: One, that defendants Brown and Levy were Franklin Eng's partners or joint venturers. Two, that defendants Brown and Levy knowingly acted against Franklin Eng's interests in connection with use of business funds for personal expenses, compensation and bonuses and management fees. Three, that Franklin Eng did not give informed consent to defendants Brown and Levy's conduct. Four, that Franklin Eng was harmed. And, five, that defendants Brown and Levy's conduct was a substantial factor in causing Franklin Eng's harm."

16

The parties also struggled with a special verdict form. Eng appears to have requested the following question, which addressed defendants' burden of proof: "Do you find that Defendants proved to you that the parties, Franklin Eng, Gerald Levy, and Michael Brown, intended to terminate their partnership or joint venture when Michael Brown formed B.L.E. Fish, Inc.?" The court proposed to remove the word "intended," but Eng objected. The court overruled Eng's objection and revised the proposal in other ways. In the end, the special verdict adopted by the court began with the following two questions: "1. Do you find that the parties entered into a partnership or joint venture in 2006?" and "2. Do you find that the parties terminated their partnership or joint venture with the formation of B.L.E. Fish, Inc.?"

The parties presented closing arguments. Eng argued, in essence, that the group formed a partnership before they submitted their first offer for the Tin Fish Gaslamp. They agreed on their respective ownership percentages, and they agreed to form a corporation as a vehicle of the partnership. Eng's counsel explained: "I wanted to make sure everybody knew we're not going to trial with you claiming that a corporation is the joint venture. The corporation is not the joint venture. The corporation was the vehicle for the joint venture. That's called a pre-incorporation agreement." In response, Brown and Levy argued the group never intended to form a partnership: "The parties at all times intended to form a Subchapter S Corporation to buy the restaurant and to operate it." And, in the alternative, they argued supersession: "So even if you believe that somewhere between [the first offer for the Tin Fish Gaslamp] and [the second offer] there was some partnership agreement reached, there was no evidence that there was. Even if

17

there was, that business was superseded by the corporation, taken in to be part of the corporation."

During jury deliberations, a juror asked the following question: "Are all corporations joint ventures and partnerships?" In an unreported conversation, the court consulted counsel regarding its proposed response. It answered, "Please see Jury Instructions CACI [Nos.] 3711 and 3712. A corporation is a legal entity organized under the California Corporations Code. Please see Special Instruction No. 24."

After several hours of deliberations, the jury reached a verdict. It answered "yes" to the first special verdict question ("Do you find that the parties entered into a partnership or joint venture in 2006?") by a vote of 10 in favor and two against. It also answered "yes" to the second special verdict question ("Do you find that the parties terminated their partnership or joint venture with the formation of B.L.E. Fish, Inc.?") by a vote of 11 in favor and one against. The court entered judgment in favor of Brown and Levy and against Eng.

Eng filed an ex parte application for the release of juror contact information. It was supported by a declaration from Eng's counsel, who stated that he spoke with several jurors after their verdict was read. These jurors said that "the jury believed that the formation of the corporation automatically superseded the partnership by the way Special Verdict Question Number 2 was worded and that they felt as though they had no choice but to vote 'YES.' " Eng's counsel also stated that one juror, an attorney, told his fellow jurors that "there were no partnership/joint venture k-1s or meetings, facts which were never raised by the defendants, to show that the partnership/joint venture never

18

existed/terminated on incorporation."  Eng argued that the jurors' comments showed they were confused and the jurors' contact information was necessary to obtain affidavits to support posttrial motions.  Defendants opposed.  They argued that an ex parte application was improper, that Eng's counsel could have asked the jurors for their contact information when he spoke with them after their verdict, and that Eng's counsel was aggressive during trial and would be aggressive in contacting the jurors as well.  Defendants also argued the information Eng sought would be inadmissible under Evidence Code section 1150.  The court denied Eng's application.

Eng moved for a new trial or, in the alternative, for judgment notwithstanding the verdict.  He raised a number of grounds, including denial of his motion to amend, denial of his motion for directed verdict, instructional error, and error in the special verdict.  The court denied Eng's motion.  With respect to the motions to amend, the court stated, "It does appear that plaintiff sought to amend during trial, four years after the case was filed and with no explanation for the delay.  In addition, plaintiff dismissed the derivative shareholder claims on the eve of trial.  On the other hand, defendant's proposed affirmative defense that any partnership was superseded by the corporation did not interject a new issue.  This was the same issue the parties argued on motion for summary judgment."  Eng appeals.

## DISCUSSION

### I

Because the resolution of many of Eng's arguments turns on disputed aspects of partnership law, we begin with a discussion of the substantive law governing partnership

19

formation and subsequent incorporation. In general, "the association of two or more persons to carry on as coowners a business for profit forms a partnership, whether or not the persons intend to form a partnership." (Corp. Code, § 16202, subd. (a).) With certain exceptions, "[a] person who receives a share of the profits of a business is presumed to be a partner in the business . . . ." (*Id.*, subd. (c)(3).) But "[t]he sharing of gross returns does not by itself establish a partnership, even if the persons sharing them have a joint or common right or interest in property from which the returns are derived." (*Id.*, subd. (c)(2).) Similarly, "[j]oint tenancy, tenancy in common, tenancy by the entireties, joint property, common property, or part ownership does not by itself establish a partnership, even if the coowners share profits made by the use of the property." (*Id.*, subd. (c)(1).)

"The question of the existence of a partnership depends primarily upon the intention of the parties ascertained from the terms of the agreement and from the surrounding circumstances. [Citations.] Ordinarily the existence of a partnership is evidenced by the right of the respective parties to participate in the profits and losses and in the management of the business. [Citations.] In ascertaining the intention of the parties, where they have entered into a written agreement, such intention should be determined chiefly from the terms of the writing. [Citation.] While the question of whether a partnership exists is to be determined from the nature of the relation agreed upon rather than the name which the parties have given to it, some weight must be given to the language of the parties themselves. [Citations.] It is the intention as evidenced by the terms of the agreement, and not the subjective or undisclosed intention of the parties that controls." (*Constans v. Ross* (1951) 106 Cal.App.2d 381, 386-387.)

20

However, "[a] partnership need not be evidenced by writing [citation]. It is immaterial that the parties do not designate the relationship as a partnership or realize that they are partners, for the intent may be implied from their acts [citations]." (*Greene v. Brooks* (1965) 235 Cal.App.2d 161, 166 (*Greene*).) "In that sense, any partnership without a written agreement is a 'de facto' partnership [citations]." (*Persson v. Smart Inventions, Inc.* (2005) 125 Cal.App.4th 1141, 1157 (*Persson*).) "[T]he question of partnership is one of fact." (*Billups v. Tiernan* (1970) 11 Cal.App.3d 372, 379 (*Billups*); see *Spier v. Lang* (1935) 4 Cal.2d 711, 716.)

An association organized as another entity (e.g., a corporation) is not a partnership. (Corp. Code., § 16202, subd. (b).) Absent unusual circumstances, this principle holds even if the corporation began as a partnership. "[I]n the usual case . . . a partnership does not continue to exist after the formation of a corporation." (*Persson, supra*, 125 Cal.App.4th at p. 1157; see *Cavasso v. Downey* (1920) 45 Cal.App. 780, 786 (*Cavasso*); *Miles, Inc. v. Scripps Clinic & Research Found.* (S.D.Cal. 1993) 810 F.Supp. 1091, 1099-1100.) "Consequently, considerable doubt exists that the obligations that flow from a partnership—including fiduciary duties among partners—may be imposed on the shareholders of a corporation duly formed and operated under California statutes. This becomes more apparent in this case where the finding of a de facto partnership was made solely for the purpose of imposing a fiduciary duty on the de facto partners, and not with respect to any other rights or obligations of partners, or for the purpose of enforcing a preincorporation agreement between the partners." (*Persson,* at p. 1157.)

Because "[a] partnership once shown to exist is presumed to continue until the contrary is shown," the party seeking to rebut the partnership relationship has the burden of showing subsequent incorporation or other reorganization. (*Asamen v. Thompson* (1942) 55 Cal.App.2d 661, 668 (*Asamen*); see *Credit Bureaus of Merced County, Inc. v. Fuller* (1962) 199 Cal.App.2d 495, 496.) If that party establishes that the partnership incorporated or reorganized into another type of entity, it has met its burden of proof to show that the partnership ended and the partnership relationship was terminated. (See *Persson, supra*, 125 Cal.App.4th at p. 1157.)

Because the party alleging subsequent incorporation or reorganization has the burden of proof to show an additional fact, and does not necessarily dispute the elements of partnership formation, the defense of subsequent incorporation or reorganization must be pled and proved as an affirmative defense. "What constitutes new matter which must be pled as an affirmative defense in order to be considered at trial was set forth in the early case of *Goddard v. Fulton* [(1863)] 21 Cal. 430, 436, where the court stated: 'If the answer, either directly or by implication, admits the truth of all the essential allegations of the complaint which show a cause of action, but sets forth facts from which it results that, notwithstanding the truth of the allegations of the complaint, no cause of action existed in the plaintiff at the time the action was brought, those facts are new matter. But if those facts only show that some essential allegation of the complaint is not true, then such facts are not new matter, but only a traverse.' " (*Lever v. Garoogian* (1974) 41 Cal.App.3d 37, 39; see *Four Star Electric, Inc. v. F&H Construction* (1992) 7 Cal.App.4th 1375, 1381.)

22

This affirmative defense is also known as "supersession" because the corporation supersedes the partnership.

The proponent of the partnership may avoid this result by offering evidence that the partners intended to retain their partnership notwithstanding incorporation. "Partners may, by agreement, continue their relations as copartners in conjunction with their relationship as stockholders of a corporation, and 'the law would take cognizance of such dual relationship and deal with "the parties in the light of their agreement[s between themselves], independently of their incorporation" . . . .' " (*Persson, supra*, 125 Cal.App.4th at p. 1158; see *Elsbach v. Mulligan* (1943) 58 Cal.App.2d 354, 369 (*Elsbach*); *Asamen, supra*, 55 Cal.App.2d at p. 669.) "[C]ourts will enforce preincorporation agreements among partners or joint venturers who have incorporated in order to carry out the agreement between or among the partners or joint venturers." (*Persson*, at p. 1159.) Because the proponent of the partnership must produce this evidence to avoid a finding that the partnership was superseded, the proponent has the burden of proof on this issue. (See *Mindenberg v. Carmel Film Productions, Inc.* (1955) 132 Cal.App.2d 598, 602 (*Mindenberg*) [affirming grant of nonsuit where proponent failed to produce sufficient evidence of intent to maintain the partnership]; see also Evid. Code, § 550, subd. (a).) In sum, if incorporation is shown, the burden shifts back to the proponent of the partnership to prove that the parties entered into a preincorporation agreement or otherwise intended for their partnership to survive incorporation because the "ordinary principle" is that the partnership would not survive. (*Persson,* at p. 1159.)

23

*Elsbach*, on which Eng primarily relies, recognized the general rule that a partnership will not survive incorporation: "[S]ince plaintiff participated in the formation of the corporation he may not now proceed in disregard of the corporate entity, since when a corporation supersedes a partnership or joint adventure, rights subsequently accruing to the partners or joint adventurers are not based on that relationship." (*Elsbach*, *supra*, 58 Cal.App.2d at p. 368.) It also recognized the exception: "If a corporation or a formal partnership is a mere agency for the purpose of convenience in carrying out a joint venture agreement, and independent and innocent third parties, such as creditors or stockholders, are not injured thereby . . . , justice would seem to demand that in determining the rights of the parties they be placed in the position each occupied under the original agreement." (*Id.* at pp. 368-369.) In *Elsbach*, there were "conflicts in the evidence as to whether the operations of the parties constituted genuine corporate functions or whether the corporate form was employed merely as a convenient method of carrying out the agreement of the parties." (*Id.* at p. 369.) The trial court could therefore reasonably find that the partnership survived its incorporation. (*Ibid.*)

Courts have shown considerable skepticism towards alleged preincorporation agreements. In *Persson*, for example, two individuals founded a consumer products business. (*Persson, supra*, 125 Cal.App.4th at p. 1147.) After three years owning and operating the business as partners, they incorporated the business and became shareholders, directors, and corporate officers. (*Ibid.*) One of the founders eventually sued the other, alleging breach of fiduciary duty and other claims. (*Id.* at pp. 1149-1150.) Following an advisory jury verdict in the plaintiff's favor, the trial court found that the

24

founders maintained a de facto partnership, notwithstanding the incorporation of the business, and the defendant breached his fiduciary duties as a partner. (*Id.* at p. 1151.) The reviewing court reversed this finding, concluding as a matter of law that the partnership did not survive incorporation. (*Id.* at p. 1156.) It held that the corporation "was not formed to carry out a preincorporation agreement which was later breached. Additionally, this is not a case where substantial justice requires that the parties be treated in accordance with a preincorporation agreement. [¶] Accordingly, we apply the ordinary principle that, after a partnership is incorporated, the rights or obligations which partners can enforce against each other no longer exist. In the absence of a preincorporation agreement or evidence the corporate form was disregarded, shareholders in a duly formed corporation operating in accordance with legal requirements do not become de facto partners, and thereby acquire fiduciary duties to each other, simply because they earn the same salary and refer to each other for convenience as partners. They have the rights and obligations of shareholders, not partners, and the trial court erred in concluding otherwise." (*Id.* at p. 1159.)

In *Mindenberg*, the appellate court affirmed an order granting nonsuit on the plaintiff's claim for an accounting and other relief. (*Mindenberg, supra*, 132 Cal.App.2d at p. 602.) The plaintiff argued that he formed a joint venture with two defendants, relying on one defendant's testimony that the group discussed going into business together. (*Id.* at p. 601.) The appellate court disagreed. It held, "The evidence shows without conflict that the original plan was formation of a corporation and the conduct of business by it, each of the three . . . to own one-third of the stock; that the

25

corporation . . . was promptly formed; that it conducted the business throughout, observing the customary corporate forms, electing officers and directors, conducting directors' meetings, acting through its elected officers, etc.; 10 shares of stock were issued to or for the benefit of each of the three participants . . . . The testimony and other proof fails to reveal any respect in which the corporation was used as a blind or sham, or as an agency of the stockholders in any manner or sense other than that of the normal corporation." (*Ibid.*) The relevant written agreements "contain[ed] no slight intimation of any joint venture in relation to the corporation or its assets or business." (*Id.* at p. 602.) The trial court therefore did not err by granting nonsuit. (*Ibid.*)

Similarly, in *Cavasso*, the appellate court found insufficient evidence "to support the finding of the [trial] court that the partnership between [defendant] and [plaintiff] continued after the formation of the corporation." (*Cavasso, supra*, 45 Cal.App. at p. 786.) The appellate court held that plaintiff's conclusory testimony was "not sufficient" to show that a partnership continued. (*Ibid.*) There was no evidence, for example, that plaintiff and defendant "had, by agreement, continued their relations as copartners, in conjunction with their relation as stockholders of the corporation . . . . If such an agreement ever existed it was not alleged or proved." (*Ibid.*)

With these authorities in mind, we turn to Eng's specific claims of error. We will discuss these legal principles where necessary in further detail below.[5]

II

Eng first contends the court erred by denying his motion in limine, which sought (1) a finding that Eng, Brown, and Levy formed a partnership as a matter of law and (2) the exclusion of any evidence or argument that B.L.E. Fish superseded the partnership. As to the first request, the trial court found that the formation of a partnership was a factual issue to be decided by the jury. As to the second, the court found that exclusion was not warranted because supersession was not an affirmative defense.

The first in limine request, while not necessarily improper, was an unusual use of the motion in limine procedure. "In limine motions are designed to facilitate the management of a case, generally by deciding difficult evidentiary issues in advance of trial. ' "The usual purpose of motions in limine is to preclude the presentation of evidence deemed inadmissible and prejudicial by the moving party. A typical order in limine excludes the challenged evidence and directs counsel, parties, and witnesses not to refer to the excluded matters during trial." ' " (*Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1593, italics omitted.) Eng's first request did not seek a ruling on

_____

5      Here, as noted above, the jury found that Brown, Levy, and Eng formed a partnership but that the partnership was terminated with the formation of B.L.E. Fish. Throughout his briefing, Eng takes issue with this finding and argues simply that the jury got it wrong. He claims that defense witnesses lied and at least one critical document was forged. These arguments misperceive this court's role and provide no basis for reversal. (See *Navarro v. Perron* (2004) 122 Cal.App.4th 797, 803.)

27

the admissibility of evidence. Instead, it sought to take a factual issue away from the jury on the ground that the relevant facts were undisputed and no rational jury could find that a partnership had not been formed. (See *Billups, supra*, 11 Cal.App.3d at p. 379 ["[T]he question of partnership is one of fact."].)

The request was more akin to a partial directed verdict on the issue of partnership formation. (See, e.g., *Newing v. Cheatham* (1975) 15 Cal.3d 351, 364-365 (*Newing*); *Moore v. Mercer* (2016) 4 Cal.App.5th 424, 450 (*Moore*).) Assuming without deciding that such a motion could properly be made prior to trial, we conclude the court did not err by denying the motion. " 'A directed verdict may be granted only when, disregarding conflicting evidence, giving the evidence of the party against whom the motion is directed all the value to which it is legally entitled, and indulging every legitimate inference from such evidence in favor of that party, the court nonetheless determines there is no evidence of sufficient substantiality to support the claim or defense of the party opposing the motion, or a verdict in favor of that party.' " (*Moore,* at p. 450.) Here, based on Levy's testimony at hearing on Eng's motion, as well as the documentary evidence surrounding B.L.E. Fish's formation and its offer to purchase the Tin Fish Gaslamp restaurant, a rational trier of fact could have found that the parties never formed a partnership. Instead, their association from the outset was intended to be organized as a corporation and was, in fact, so organized.

Even if the court had erred, Eng has not shown prejudice. Eng claims he was forced to litigate "a non-issue," but that is insufficient. Eng has not shown how litigating the issue of partnership affected the outcome of the trial. Eng points out that the first

28

special verdict question, concerning partnership formation, would not have been submitted to the jury if the court had found that the partnership was formed as a matter of law. But the jury found in Eng's favor on this question, so Eng fails to show how its inclusion prejudiced him.[6]

Eng's second in limine request to exclude any evidence or argument that B.L.E. Fish superseded the partnership was premised on the assertion that such evidence was irrelevant because Brown and Levy had not pled an affirmative defense based on supersession. The trial court believed that merger or supersession was not an affirmative defense and denied the motion. As discussed above, this belief was in error. Once Eng proved the existence of a partnership, it was Brown and Levy's burden to introduce evidence of subsequent incorporation. (See *Asamen, supra*, 55 Cal.App.2d at pp. 668-669.) However, given the events at trial, it is clear that even if the court had correctly identified supersession as an affirmative defense, it would not have excluded such evidence. The court changed its view, accepted that supersession was an affirmative defense, and granted Brown and Levy's motion to amend their answer to assert the defense. There is no reasonable probability the court would have proceeded differently here, had the court understood that supersession was an affirmative defense from the

---

[6] Eng appears to believe that, had the trial court found a partnership as a matter of law, Brown and Levy would have been precluded from arguing the affirmative defense of supersession. This is incorrect. The affirmative defense of supersession assumes that a partnership has been found to exist. A finding that a partnership exists as a matter of law does not affect the availability of this defense.

29

outset of trial. Eng has not shown his motion in limine would have been granted had the court not misunderstood the affirmative defense.

## III

Relatedly, Eng contends the court erred by allowing Brown and Levy to amend their answer during trial to assert supersession as an affirmative defense. "Any judge, at any time before or after commencement of trial, in the furtherance of justice, and upon such terms as may be proper, may allow the amendment of any pleading or pretrial conference order." (Code Civ. Proc., § 576.) "This language necessarily implies the trial judge has discretion on whether to permit amendment to pleadings during the course of trial, and scores of cases so hold. [Citations.] [¶] The cases on amending pleadings during trial suggest trial courts should be guided by two general principles: (1) whether facts or legal theories are being changed and (2) whether the opposing party will be prejudiced by the proposed amendment. Frequently, each principle represents a different side of the same coin: If new facts are being alleged, prejudice may easily result because of the inability of the other party to investigate the validity of the factual allegations while engaged in trial or to call rebuttal witnesses. If the same set of facts supports merely a different theory . . . no prejudice can result." (*City of Stanton v. Cox* (1989) 207 Cal.App.3d 1557, 1563 (*City of Stanton*).) We review the trial court's order for abuse of discretion. (*Garcia v. Roberts* (2009) 173 Cal.App.4th 900, 909.)

Here, Brown and Levy's position throughout the litigation had been that no partnership was formed and, in the alternative, if a partnership was formed it was superseded by the incorporation of B.L.E. Fish. As the trial court pointed out, Brown and

30

Levy explicitly made that argument in their motion for summary judgment and during pretrial motions. They simply did not believe that supersession was an affirmative defense, and at the outset of trial the court agreed. When the court changed its view, Brown and Levy's belief became wrong. To move forward, however, Brown and Levy merely needed to refocus the emphasis of their defense. Because their underlying factual assertions did not change, and because even the underlying legal assertions were consistent, the court did not abuse its discretion in allowing Brown and Levy to formalize their argument as an affirmative defense. (See *City of Stanton, supra*, 207 Cal.App.3d at p. 1563.) The argument was already part of the trial, so Eng could show no prejudice.

These circumstances are analogous to those considered by our Supreme Court more than 100 years ago: "We cannot say that the court abused its discretion in permitting the amended answer. The rule is that courts will be liberal in allowing an amendment to a pleading when it does not seriously impair the rights of the opposite party—and particularly an amendment to an answer. A defendant can generally set up as many defenses as he may have. Appellant contends that the affidavits upon which the motion to amend was made show that it was based mainly on a mistake of law made by respondent's attorney; but, assuming that to be so, still the power of a court to allow an amendment is not limited by the character of the mistake which calls forth its exercise." (*Gould v. Stafford* (1894) 101 Cal. 32, 34.) An analogous mistake of law occurred here, and the trial court did not abuse its direction by allowing Brown and Levy to correct it by amending their answer to assert the affirmative defense of supersession.

31

Eng contends that the defense contradicted Brown's and Levy's testimony at trial, in which they denied ever forming a partnership with Eng. In Eng's view, they could not simultaneously deny the partnership and claim it was superseded by the corporation. (See *Brautigam v. Brooks* (1964) 227 Cal.App.2d 547, 560-561.) We disagree. A partnership may be formed even where the parties do not specifically intend their relationship to be a partnership. (*Greene, supra*, 235 Cal.App.2d at p. 166.) It was not factually inconsistent for Brown and Levy to argue that a partnership was not formed and, even if it was formed unintentionally, it was superseded by the incorporation of B.L.E. Fish.

Eng repeatedly claims that the doctrine of judicial estoppel should apply, but he does not attempt to show that the elements of the doctrine were satisfied here. This omission alone is fatal to his argument. (See *Cahill v. San Diego Gas & Electric Co*. (2011) 194 Cal.App.4th 939, 956 (*Cahill*).) And, in any event, we are not persuaded that the doctrine applies. " 'Judicial estoppel prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding. The doctrine serves a clear purpose: to protect the integrity of the judicial process.' [Citation.] 'This obviously contemplates something other than the permissible practice . . . of simultaneously advancing in the same action inconsistent claims or defenses which can then, under appropriate judicial control, be evaluated as such by the same tribunal, thus allowing an internally consistent final decision to be reached.' " (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 181.) "[T]he doctrine [of judicial estoppel] should apply when: (1) the same party has taken two

32

positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake." (*Id.* at p. 183.) Here, Eng cannot show that Brown and Levy were successful in asserting their position that a partnership was never formed. Instead, Brown and Levy took their allegedly inconsistent positions during litigation to determine that question. This strategy was an example of the "permissible practice" of advancing alternative arguments *before* a final decision is reached. (*Id.* at p. 181.)

IV

Eng claims the court erred by denying his motion for directed verdict on Brown and Levy's affirmative defense of supersession. As noted, " 'A directed verdict may be granted only when, disregarding conflicting evidence, giving the evidence of the party against whom the motion is directed all the value to which it is legally entitled, and indulging every legitimate inference from such evidence in favor of that party, the court nonetheless determines there is no evidence of sufficient substantiality to support the claim or defense of the party opposing the motion, or a verdict in favor of that party.' " (*Moore, supra*, 4 Cal.App.5th at p. 450.) "On appeal, we decide de novo whether sufficient evidence was presented to withstand a directed verdict." (*Bonfigli v. Strachan* (2011) 192 Cal.App.4th 1302, 1315.)

Brown and Levy's affirmative defense of supersession required them to show that their partnership with Eng was subsequently incorporated. "[A]fter a partnership is

33

incorporated, the rights or obligations which partners can enforce against each other no longer exist." (*Persson, supra*, 125 Cal.App.4th at p. 1159.) There was ample evidence at trial to support the defense. The transaction that was the subject of the purported partnership—the purchase of the Tin Fish Gaslamp—was taken over by B.L.E. Fish in the offer that was accepted and successfully closed. B.L.E. Fish was duly incorporated with Brown, Levy, and Eng as shareholders. They signed a management agreement designating Brown and Levy to act on behalf of the corporation. The corporation owned and operated the restaurant, its corporate form was respected, and it made distributions consistent with the shareholders' S corporation election. Nothing of the alleged partnership remained. Based on this evidence, a rational trier of fact could find that the corporation superseded the partnership. The trial court did not err by denying Eng's motion for a directed verdict.

Eng argues that Brown and Levy were required to offer evidence that the partners specifically agreed to terminate the partnership and replace it with B.L.E. Fish. Eng's argument appears to rely on a misinterpretation of the parties' respective burdens of proof. To support their affirmative defense of supersession, Brown and Levy needed to prove only that the partnership incorporated. (See *Persson, supra*, 125 Cal.App.4th at p. 1157.) Eng could rebut this affirmative defense by showing that the parties had a preincorporation agreement to continue the partnership notwithstanding the formation of the corporation. (*Id.* at p. 1159; see *Elsbach, supra*, 58 Cal.App.2d at pp. 368-369.) But to obtain a directed verdict on this basis, Eng would have had to have shown that the existence of a preincorporation agreement to maintain the partnership was essentially

uncontested, i.e., there was " 'no substantial support' " for Brown and Levy's position that no such preincorporation agreement existed. (*Newing, supra*, 15 Cal.3d at p. 359; see *Moore, supra*, 4 Cal.App.5th at p. 450.) He has made no effort to do so. Instead, Eng has relied on his belief that Brown and Levy were required to *disprove* the existence of a preincorporation agreement as part of their defense of supersession. For the reasons we have discussed, this belief was in error.[7]

Eng appears to contend that the trial court's order denying Brown and Levy's motion for summary judgment supports his view that Brown and Levy were required to disprove the existence of a preincorporation agreement to maintain the partnership notwithstanding the incorporation of B.L.E. Fish. But, given the shifting burdens of proof on summary judgment, this order has no relevance to Eng's request for a directed verdict. (See, e.g., *Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1003 ["When the defendant moves for summary judgment, in those circumstances in which the plaintiff would have the burden of proof by a preponderance of the evidence, the defendant must present evidence that would preclude a reasonable trier of fact from finding that it was more likely than not that the material fact was true [citation], or the defendant must establish that an element of the claim cannot be established . . . ."].) In

---

[7] The proof Eng argues Brown and Levy were required to produce, i.e., a specific intent or agreement to terminate the partnership, would only have become relevant if Eng had shown he was entitled to a directed verdict on the issue of the existence of a preincorporation agreement. However, because Eng did not establish that the parties entered into a preincorporation agreement to continue the partnership, the burden never shifted back to Brown and Levy to rebut that showing.

their summary judgment motion, Brown and Levy cited *Persson* and argued that any partnership was superseded by the formation of B.L.E. Fish. Eng responded that the partnership survived the formation of B.L.E. Fish based on a preincorporation agreement. The trial court denied the motion for summary judgment because it found that "a triable issue of fact exists as to whether the corporation was formed to carry out a preincorporation agreement." The trial court's finding that Eng had raised a triable issue of material fact on the existence of a preincorporation agreement is not the same as a finding that Eng had shown there was no substantial support for Brown and Levy's contrary position at trial. The court did not err by denying Eng's motion for directed verdict.

V

In a related argument, Eng contends the court erred by not instructing the jury as follows: "Defendants have the burden of proof to you concerning their argument that the parties intended that B.L.E. Fish, Inc. would supersede and terminate their partnership." We conclude the court did not err because Eng's proposed instruction was not a correct statement of the law.

"A party is entitled upon request to correct, nonargumentative instructions on every theory of the case advanced by him which is supported by substantial evidence. The trial court may not force the litigant to rely on abstract generalities, but must instruct in specific terms that relate the party's theory to the particular case." (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 572.) "The legal adequacy of jury instructions is a

36

legal issue subject to the de novo standard of appellate review." (*Isip v. Mercedes-Benz USA, LLC* (2007) 155 Cal.App.4th 19, 24.)

It is elementary that a court may refuse a party's request for a jury instruction that misstates the law. "A trial court has no duty to modify or edit an instruction offered by either side in a civil case. If the instruction is incomplete or erroneous the trial judge may, as he did here, properly refuse it." (*Truman v. Thomas* (1980) 27 Cal.3d 285, 301; see *Boeken v. Philip Morris, Inc.* (2005) 127 Cal.App.4th 1640, 1673.) As discussed above, Brown and Levy's supersession defense did not require a specific intent that B.L.E. Fish would supersede and terminate the partnership. They were required to show only that the partnership was in fact incorporated. (See *Persson, supra*, 125 Cal.App.4th at p. 1157.) The trial court therefore properly refused Eng's proposed jury instruction.

Eng argues that his proposed instruction was a correct statement of law under *Elsbach*. We disagree. *Elsbach* recognized the general rule that incorporation terminates the partnership relationship. (*Elsbach, supra*, 58 Cal.App.2d at p. 368.) It did not impose the requirement urged by Eng, i.e., that the parties must have specifically intended such a result. If incorporation is shown, the burden shifts back to the proponent of the partnership to prove that the parties entered into a preincorporation agreement or otherwise intended for their partnership to survive incorporation because the "ordinary principle" is that the partnership would not survive. (*Persson, supra*, 125 Cal.App.4th at p. 1159.) *Elsbach* does not place the burden on the party resisting the partnership to show that the parties did *not* enter into a preincorporation agreement.

37

Eng criticizes the trial court for imposing a rule of "automatic termination" whenever a partnership is incorporated. But again, as a general rule, termination of the partnership does occur automatically upon incorporation. "[T]he ordinary principle [is] that, after a partnership is incorporated, the rights or obligations which partners can enforce against each other no longer exist." (*Persson, supra*, 125 Cal.App.4th at p. 1159.) That is, "in the usual case . . . a partnership does not continue to exist after the formation of a corporation." (*Id.* at p. 1157.) No specific showing of intent or agreement to terminate the partnership is required.

VI

In a similar vein, Eng contends the court erred by omitting the principle of intent from the special verdict form. Eng appears to have requested the following question, which the court rejected: "Do you find that defendants proved to you that the parties, Franklin Eng, Gerald Levy, and Michael Brown, intended to terminate their partnership or joint venture when Michael Brown formed B.L.E. Fish, Inc.?" " 'The use of special interrogatories in a verdict form lies within the sound discretion of the trial court, and the court's determination will not be disturbed on appeal absent a clear abuse of discretion.' " (*J.P. v. Carlsbad Unified School Dist.* (2014) 232 Cal.App.4th 323, 340.)

For the same reasons as discussed above, Eng's proposed special verdict question misstated the law by requiring a specific finding of intent to terminate the partnership

38

upon incorporation. (See *Persson, supra*, 125 Cal.App.4th at pp. 1157, 1159.) The court did not abuse its discretion by refusing it.[8]

VII

Eng further contends the court erred in its response to a juror's question during deliberations. The juror asked, "Are all corporations joint ventures and partnerships?" The court answered, "Please see Jury Instructions CACI [Nos.] 3711 and 3712. A corporation is a legal entity organized under the California Corporations Code. Please see Special Instruction No. 24."

Eng complains that the court's response was confusing and could have been improved in a number of ways. But it does not appear from the record that Eng suggested any of these alternatives to the court. Eng has therefore forfeited any claim of error on that basis. "When the trial court responds to a question from a deliberating jury with a generally correct and pertinent statement of the law, a party who believes the court's response should be modified or clarified must make a contemporaneous request to that effect; failure to object to the trial court's wording or to request clarification results in forfeiture of the claim on appeal." (*People v. Dykes* (2009) 46 Cal.4th 731, 802.)

---

[8] In this context, Eng argues that *Persson* is inapplicable because there was a significant delay in that case between formation of the partnership and formation of the corporation. (See *Persson, supra*, 125 Cal.App.4th at p. 1147.) We disagree. If anything, the closeness in time between the formation of the alleged partnership here and the formation of B.L.E. Fish shows that the parties did not intend for the partnership to survive because it had not undertaken any significant business activities.

To the extent Eng asserts that the court's response was an incorrect statement of law, he has not supported that assertion.  The CACI instructions cited by the court are correct and were pertinent to the jury's question regarding partnership formation.  The instruction regarding a corporation as a legal entity was likewise correct and addressed the jury's confusion regarding the relationship between corporations and partnerships.  Special Instruction No. 24, to which Eng agreed, explained the connection between partnership formation and subsequent incorporation, thus reminding the jury of the parties' dispute over the issue of supersession.  Eng's claim that the instruction advised the jury that "if there is a corporation, there is no partnership because a corporation is separately formed" is therefore incorrect.  The court's response encapsulates the law on this topic that it had already provided the jury.  Eng has not shown it was erroneous.[9]

### VIII

Eng argues that the court erred by denying his motion to amend his complaint to add allegations that Brown and Levy breached their fiduciary duties as shareholders in B.L.E. Fish, not simply as partners.  As noted (see pt. III, *ante*), courts have the power to allow amendments before or after the commencement of trial in the interests of justice.  (Code Civ. Proc., § 576.)  " 'Courts must apply a policy of liberality in permitting amendments at any stage of the proceeding, including during trial, when no prejudice to

---

[9]    Eng also appears to claim, contradictorily, that the court was prohibited from instructing the jury on any legal issues in response to its question.  Eng is mistaken.  (See Code Civ. Proc., § 614.)  Indeed, a trial court's failure to provide legal instructions in response to a jury's question may be reversible error under certain circumstances.  (See, e.g., *Bartosh v. Banning* (1967) 251 Cal.App.2d 378, 387-388.)

the opposing party is shown.' " (*Duchrow v. Forrest* (2013) 215 Cal.App.4th 1359, 1377; see *Desny v. Wilder* (1956) 46 Cal.2d 715, 751 ["Great liberality is indulged in matters of amendment to the end that lawsuits may be determined upon their merits."].)

"Generally, 'the trial court has wide discretion in determining whether to allow the amendment, but the appropriate exercise of that discretion requires the trial court to consider a number of factors: "including the conduct of the moving party and the belated presentation of the amendment. [Citation.] . . . The law is well settled that a long deferred presentation of the proposed amendment without a showing of excuse for the delay is itself a significant factor to uphold the trial court's denial of the amendment. [Citation.]" [Citation.] "The law is also clear that even if a good amendment is proposed in proper form, unwarranted delay in presenting it may—of itself—be a valid reason for denial." [Citation.]' " (*Emerald Bay Community Assn. v. Golden Eagle Ins. Corp.* (2005) 130 Cal.App.4th 1078, 1097, italics omitted.) "The trial court's ruling on a motion to amend a pleading is reviewed under an abuse of discretion standard [citation], and the appellant has the burden of establishing its discretion was abused." (*Ibid.*)

Here, the court was properly skeptical of Eng's proposed amendment. It was offered during trial, after several years of litigation, and based on facts known to Eng since he filed his initial complaint. The amendment also mirrored a theory of recovery that Eng *dismissed* prior to trial, i.e., the shareholder derivative action against Brown and Levy for breaching their duties to the corporation.

Nonetheless, the record shows that the court took Eng's proposed amendment under submission. The court intended to rule after the completion of evidence and

41

argument, since it believed it was an equitable claim to be decided by the court.  The court was unsure what the evidence would show about the nature of Eng's injury, whether it was primarily his personal injury or an injury to the corporation, which would determine whether Eng could bring a direct claim or whether it could only be a shareholder derivative suit.  If the evidence showed the claim was personal to Eng, the court's inclination was to allow the amendment.  If the evidence showed the claim belonged to the corporation, the court's inclination was to deny the amendment because Eng had already dismissed his shareholder derivative claim.

Eng, however, changed course.  In connection with his motion for directed verdict, his counsel argued that his claims had nothing to do with B.L.E. Fish.  He agreed with the court that Eng was not asserting "a breach of fiduciary duty, minority shareholder to majority shareholder" claim.  Eng's counsel said, "I think that [defense counsel's] argument is that once the corporation superseded the partnership in his view, there are no more fiduciary duties owed because we didn't allege it.  *That I don't dispute*."  (Italics added.)

The court therefore denied Eng's motion to amend.  It stated, "There is no basis to go forward with a breach of fiduciary duty claim, corporate minority shareholder to majority shareholder, even if the two bases on which that might have been asserted directly by an individual were established[,] given the representation now that [the] argument is all of those fiduciary duties [were] the fiduciary duties owed as partner[s]."  Eng's counsel responded, "I guess that pretty well sums it up."

42

Under these circumstances, the court did not abuse its discretion in denying Eng's motion to amend. Eng's amendment was presented with a years-long unexcused delay. And, during trial, Eng disclaimed the theory underlying the proposed amendment itself. The court was not required to allow an amendment to assert a theory that Eng's counsel told the court he was no longer pursuing. (See *Horn v. Atchison, T. & S. F. R. Co.* (1964) 61 Cal.2d 602, 605 ["Counsel, by his own statement, was authorized to make such concessions and his client is bound thereby in the absence of fraud."].)

Resisting this conclusion, Eng appears to argue that he acquiesced in the denial of his motion to amend because he believed the court would correctly instruct the jury on his remaining claim for breach of partnership fiduciary duties. We fail to see the connection between the two issues. Eng's claim based on partnership fiduciary duties was separate from his claim based on alleged corporate fiduciary duties. If Eng wanted to assert the latter claim, he was required to pursue his motion to amend. It appears Eng made the tactical decision to focus on his claim based on partnership fiduciary duties and acquiesced in the court's denial of his motion to amend to assert corporate fiduciary duties. Eng may now regret that decision, but that is insufficient to show the court erred.

Eng contends that "[t]he facts of the misappropriation were all the same no matter which hat the [defendants] were wearing." But the trial court was not required to grant leave to amend, in light of the circumstances discussed above, simply because the two breach of fiduciary duty claims shared a subset of relevant facts. Moreover, Eng ignores the differences between the two claims, including the source and scope of the fiduciary

43

duties involved and the remedies available.  The court did not err by denying Eng's

motion to amend.[10]

## IX

Eng argues that the court erred by overruling his objection and denying his motion

to exclude the testimony of defense expert Thomas Lambert.  Lambert testified about the

reasonableness of Brown and Levy's compensation and fees, as well as certain IRS

regulations governing S corporations.  Eng appears to claim that the court should have

excluded Lambert's testimony as unduly prejudicial under Evidence Code section 352.

"The court in its discretion may exclude evidence if its probative value is

substantially outweighed by the probability that its admission will (a) necessitate undue

consumption of time or (b) create substantial danger of undue prejudice, of confusing the

issues, or of misleading the jury."  (Evid. Code, § 352.)  "The trial court's determination

of undue prejudice is subject to review under the abuse of discretion standard.  [Citation.]

When weighing probative value against the danger of prejudice, a trial court is deemed to

have abused its discretion if its decision was arbitrary, capricious, or patently absurd and

---

[10]    Because Eng has not shown the court erred, his argument that the court
erroneously *intended* to deny him a jury trial on his proposed new claim based on
corporate fiduciary duties is moot.  The court did not deny Eng a jury trial on his claim
based on corporate fiduciary duties; it did not hold a trial on that claim at all because it
denied Eng's motion to amend.  We therefore need not decide whether Eng was entitled
to a jury trial on such a claim, although we note that other courts have held that a plaintiff
has no jury trial right on analogous claims.  (See *Central Laborers' Pension Fund v.
McAfee, Inc.* (2017) 17 Cal.App.5th 292, 350; *Interactive Multimedia Artists v. Superior
Court* (1998) 62 Cal.App.4th 1546, 1556.)

resulted in a manifest miscarriage of justice." (*Phillips v. Honeywell Internat. Inc.* (2017) 9 Cal.App.5th 1061, 1081.)

Eng has not shown the trial court abused its discretion. Eng primarily claims that Lambert's testimony was not probative because it did not respond to the testimony of Eng's expert witness. But expert testimony need not respond to another expert's testimony in order to be relevant, probative, and admissible. (See Evid. Code, § 801.) Eng argued at trial that Brown and Levy breached their fiduciary duties by paying themselves excessive compensation and fees. Brown and Levy's defense was, in part, that the compensation and fees were reasonable. Lambert's testimony was directly relevant to this issue. Eng also claims that Lambert's testimony was prejudicial because he testified about certain corporate formalities and regulations. But, again, this testimony was relevant because it supported Brown and Levy's defense, i.e., that the partnership had been superseded by the corporation, which was not a mere vehicle for the partnership under a preincorporation agreement.

X

Eng contends the court erred by denying his ex parte request for juror contact information under Code of Civil Procedure section 237. Although Eng has not provided a transcript of the relevant hearing, the court's minute order states that "at the end of trial, the Court asked jurors to stay behind to speak with counsel, if they chose, and further, that the juror, whose contact information is being requested by way of this ex parte application, did stay behind and plaintiff's counsel could have asked for his information at the time."

45

Code of Civil Procedure section 237 requires that a petition seeking juror contact information "shall be supported by a declaration that includes facts sufficient to establish good cause for the release of the juror's personal identifying information."  (*Id.*, subd. (b).)  Good cause includes a showing that the party seeking disclosure has made a diligent effort to contact the jurors through other means.  (*People v. Jones* (1998) 17 Cal.4th 279, 317; *People v. Carrasco* (2008) 163 Cal.App.4th 978, 990; see *Townsel v. Superior Court* (1999) 20 Cal.4th 1084, 1094, fn. 3 (*Townsel*).)  "We review the denial of a petition for disclosure for an abuse of discretion."  (*People v. Cook* (2015) 236 Cal.App.4th 341, 346 (*Cook*).)

Eng has not shown the court abused its discretion.  He does not address the diligence requirement, except to say that it would render Code of Civil Procedure section 237 meaningless.  We disagree.  The court's inherent power to protect jurors survived the enactment of the statute, and the diligence requirement is part of that power.  (See *Townsel, supra*, 20 Cal.4th at p. 1096 & fn. 4; *People v. Tuggles* (2009) 179 Cal.App.4th 339, 381.)  It ensures that parties take advantage of consensual interactions with jurors, such as those following the verdict, before seeking court intervention.  Further, Eng's ex parte application showed that the jurors' names were available to him.  The court's minute order recording the jury's verdict, for example, lists each juror's first and last names.  Eng attached that minute order to his ex parte application itself.  Eng has not shown that the

46

court abused its discretion in denying his ex parte application for juror contact information based on lack of diligence.[11]

Moreover, even if the diligence requirement did not apply, Eng did not show good cause to justify the disclosure of juror contact information. Eng primarily sought the information to support his argument that the jurors were confused about the jury instructions and the special verdict form, including the second question regarding termination of the partnership. But any juror statements discussing such confusion would have been inadmissible to impeach the verdict. (See Evid. Code, § 1150, subd. (a); *Bell v. Bayerische Motoren Werke Aktiengesellschaft* (2010) 181 Cal.App.4th 1108, 1125 ["[J]uror declarations are inadmissible to the extent that they purport to describe the jurors' understanding of the instructions or how they arrived at their verdict."]; *Bly-Magee v. Budget Rent-A-Car Corp.* (1994) 24 Cal.App.4th 318, 325-326 [declarations expressing confusion regarding special verdict form held inadmissible].) Eng also claims, in passing, that a juror committed misconduct because he provided his own opinion of the law. But in his posttrial motion, Eng claimed only that the juror, who was

---

11    *People v. Johnson* (2013) 222 Cal.App.4th 486, 497 disagreed that the diligence requirement survived the enactment of Code of Civil Procedure section 237, at least in criminal cases, because the statute provides that juror contact information must be sealed following a criminal verdict. *Johnson* believed a diligence requirement would encourage counsel to try to circumvent the sealing order. (*Ibid.*) Eng does not cite *Johnson* or provide any cogent legal argument or other authority that the diligence requirement does not apply here, so he has forfeited any argument in this vein. (*Cahill, supra*, 194 Cal.App.4th at p. 956.) Moreover, we note that the statute does not require the sealing of juror contact information in civil cases, so the reasoning of *Johnson* does not necessarily apply here. (See Code Civ. Proc., § 237, subd. (a)(2).)

47

an attorney, told his fellow jurors that "there were no partnership/joint venture k-1s or meetings, facts which were never raised by the defendants, to show that the partnership/joint venture never existed/terminated on incorporation."  But this vague allegation does not establish that the juror conveyed any legal principles; he stated only the evidentiary fact that the alleged partnership had no documentation or formal meetings.  This is not misconduct.  Eng's showing was therefore insufficient to constitute good cause to release juror contact information.  (See *Cook, supra*, 236 Cal.App.4th at p. 346 ["Good cause does not exist where the allegations of jury misconduct are speculative, conclusory, vague, or unsupported."].)

XI

In reply, for the first time, Eng argues that the court's alleged errors constitute structural errors that require reversal without consideration of prejudice.  (See *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 801, fn. 6; *Conservatorship of Maria B.* (2013) 218 Cal.App.4th 514, 534.)  For the reasons we have already discussed, Eng has not shown the trial court committed any structural error.  Eng is not entitled to reversal on this basis.

DISPOSITION

The judgment is affirmed.

IRION, J.

WE CONCUR:

McCONNELL, P. J.

AARON, J.